## C. O. MOON v. A. S. HALVERSON.[1]

November 24, 1939.

No. 32,117.

*F. J. McPartlin* and *George L. Bargen,* for appellant.
*Daniel DeLury* and *Arnold C. Forbes,* for respondent.

HILTON, JUSTICE.

Appeal from an order of the district court for Beltrami county sustaining a demurrer to the petition of C. O. Moon to annul the election of A. S. Halverson to the office of register of deeds and to oust him from office.

The decisive facts are as follows. Contestant was a candidate for reëlection to the office of register of deeds at the general election held November 8, 1938. Halverson was the rival aspirant.

[1]Reported in 288 N. W. 579.

By statute, the office is nonpartisan, and candidates file for it and are placed upon the ballot without party designation.

Prior to filing for office, Halverson solicited and received the endorsement of the county unit of the Farmer-Labor political party. This party had candidates for the various partisan offices and was actively supporting those running for nonpartisan elective offices. Halverson sought and obtained active support of this party during the campaign as its endorsed candidate. Through newspapers, circulars, and public meetings, it was made known to the public that the contestee was the candidate supported by the Farmer-Labor party. In addition, it is alleged, Halverson "permitted himself to be presented to the voters and their votes solicited for said office as a Farmer-Labor candidate." Further allegations are that "in all respects he conducted a campaign as a Farmer-Labor candidate for the office * * * and was publicly known, and intentionally permitted himself to be known as a Farmer-Labor candidate for the office * * *." It is then alleged that by reason of these party activities and the party endorsement, he received the votes of those in sympathy with the party and without which he could not have been elected.

Contestee's demurrer to the petition was sustained.

This election contest is brought pursuant to 1 Mason Minn. St. 1927, § 570, which provides a summary procedure to test the right to office. This statute permits contest of the right of a person to office "on the ground of deliberate, serious and material violation of the provisions of this act [corrupt practices act] or of any other provisions of law relating to nominations and elections."

Contestant's claim is that Halverson violated 1 Mason Minn. St. 1927, § 294, which is part of the election law rather than the corrupt practices act. It reads:

"* * * the names of all candidates for nomination for the office of chief justice, associate justice of the supreme court, * * * and all elective county officers, * * * shall be placed

upon a separate primary ballot hereinafter designated as 'non-partisan primary ballot.'

"No party or other designation, except as above, shall be placed on such ballot except as herein provided, nor shall any candidate filing for nomination on said nonpartisan primary ballot be permitted or required to state his party affiliation."

At this time we are not disposed to construe precisely what the word "primary" was intended to accomplish. The result which must be reached here would not be altered in any event.

Previous to the nonpartisan election movement, governmental officers, state and local, were selected from candidates running for office on party tickets. After enactment of the nonpartisan laws, all county offices (including register of deeds), among others, were placed in the nonpartisan category. Its objective was to sever certain offices from the control of political parties and to permit emphasis of the candidate's merits irrespective of his party membership or association. Whether adequate statutory provisions were made to accomplish this "Utopia" is not a present concern except that unless contestee's activities are prohibited by law they are not grounds for forfeiture.

Two constructions of § 294 are possible. One is that the candidate shall not be permitted or required to state his party affiliations *at any time*. The other is that the statute has reference to the filing for nomination and the contents of the ballot. As to these, the aspirant is prohibited from stating his party affiliation. We think the latter the more practical and reasonable in light of our elective system of government. If more were comprehended by the legislature, provisions should have been enacted broad enough to accomplish the desired result.

The statute does not prohibit party activity or endorsements. Even if a very literal interpretation were given, as appellant insists, a party endorsement would not constitute a stating of his party affiliation. We find nothing in the statute which prohibits, under threat of forfeiture, a candidate for a nonpartisan office obtaining a party endorsement or supporting other candidates of

a particular party. In our democratic system of government, absent constitutional statutory provisions to the contrary, there is nothing wrong in groups or political parties doing their utmost *within the scope of propriety* to advance the candidacy of an individual satisfactory to them. The candidate for the nonpartisan office is not thereby rendered a party candidate. Rather he is an individual supported by a party and free to encourage support from other sources, political and nonpolitical.

If the legislature intended to accomplish more extensive objectives than the statute before us does, adequate legislation could easily have been enacted. Instead it expressly enacted that a candidate *"filing for nomination"* shall not be permitted or required to state his party affiliation.

Interesting to note is the fact that by § 559 the right to participate in political activity is carefully preserved to the candidate. By it a candidate may state publicly his preferences for, or support of, any other candidate for any office to be voted for at the same primary or general election. This indicates that the legislature intended to give effect to the nonpartisan movement insofar as it harmonized with the realities of our elective system of government. The present statute (§ 294) cannot reasonably be construed to compel a candidate to forsake absolutely all normal activity in the party with which he is associated. We cannot find a violation of § 294 either in the endorsement or the party activity of contestee. Nothing in the statute indicates that a party's privilege to further the candidacy of those thought to be desirable is violative of it. Contestant's view leads to the impossible and highly artificial rule that a candidate cannot disclose his party affiliation not only at the time of filing but thereafter during the campaign.

It is interesting to note in passing that although contestant claims, among other things, a violation of the statute in that contestee stated his party affiliation, yet in the petition we have been unable to find an express allegation that Halverson ever stated his party affiliations. Good pleading requires that matters going to the heart of the theory of pleading should be expressly alleged

rather than left to inference. But this aside, we think the lower court correctly held that the facts alleged do not state a cause of action. The present statute is not comprehensive enough to condemn the party activities or the party endorsement.

The order appealed from is affirmed.

MR. CHIEF JUSTICE GALLAGHER and MR. JUSTICE PETERSON took no part in the consideration or decision of this case.

LORING, JUSTICE (concurring specially).

I concur in the interpretation given the statute, but I cannot concur in the language which tends to place the stamp of this court's approval on party endorsements of "nonpolitical" candidates especially as to those endorsements of judicial candidates. When candidates for such offices were placed on a nonpartisan ballot it was, it seems to me, the purpose of the legislature to lift the judgeships above sordid political influence and to free the candidates from obligation to a political party so that if elected they might render judicial instead of partisan political decisions on matters where party programs, party interests, or even prominent party leaders might be involved. The abuse and accusations of party treason which have been heaped upon some judges in the recent past because of decisions thought to be contrary to the interests of an endorsing party ought to be evidence enough of the impropriety of party endorsements and of their purpose to induce partisan political rather than impartial judicial decisions. Judges are or should be elected to interpret the law as they find it without fear or favor. It poisons the very fount of democracy if they do not do so. Nothing so shakes the confidence of the people in their courts and arouses contempt for their government as politically minded judges. There can be no propriety in any influence which tends, consciously or otherwise, to prevent impartiality or which tends to create a feeling of party obligation. If the statutes or the constitution as interpreted by the courts do not suit the people, the proper remedy lies in the legislature or by amendment to the constitution, not in judicial misinterpretation.

Much of the foregoing applies with some force to other nonpartisan offices where obviously the law seeks a business administration based upon merit rather than on party favoritism. But I realize that the legislature failed to foresee how easily endorsement by political parties might be resorted to to defeat the objects so obviously sought. It failed to implement its purposes further than to forbid party or other designations upon the ballot. The statute does not forbid party endorsements of any nonpolitical candidates. Nevertheless their impropriety in the case of such candidates, judicial or nonjudicial, seems obvious. Its impropriety in the case of judicial candidates seems most obvious.

JULIUS J. OLSON, JUSTICE.

I concur in the views expressed by Mr. Justice Loring.