[Civ. No. 28396.    Second Dist., Div. One.    Apr. 5, 1965.]

CALIFORNIA DEMOCRATIC COUNCIL, etc., et al., Plaintiffs and Appellants, v. ROGER ARNEBERGH et al., Defendants and Respondents.

Leon M. Cooper for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, Sanford N. Gruskin, Deputy Attorney General, Harold W. Kennedy, County Counsel, Edward H. Gaylord, Assistant County Council, Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones and Claude E. Hilker, Assistant City Attorneys, for Defendants and Respondents.

LILLIE, J.—By this action for declaratory relief and an injunction, plaintiffs have challenged the constitutionality of certain legislation enacted in 1963 and known as the "Truth in Endorsements Law." (Elec. Code, § 8600 et seq.) Specifically exempted from the above challenge are certain 8601, subdivisions (1) and (2), and section 8602. Defendants had judgment on the pleadings; in addition to denying an injunction, the judgment declared that section 8600, section 8601, subdivisions (3) and (4), and sections 8603 through 8606 of the Elections Code are constitutional and may be constitutionally applied to all of the plaintiffs.

The legislation provides, in brief, that every advertisement which (1) makes reference to any candidate for nomination for partisan office in a direct primary and (2) contains a statement to the effect that the candidate has been endorsed by an organization using as a part of its name the name of a political party, shall (3) bear a notice that the organization is an unofficial political group.[1] California Democratic Council is concededly a group of volunteer, unpaid party members not acting in any official party capacity; the individual plaintiffs are either members of the above organization or

---

[1] If the advertisement is intended for broadcast or telecast by radio or television, the notice shall be read in full instead of printed.

intend to seek its preprimary endorsement for public office. It is alleged that neither the individual plaintiffs, nor plaintiff California Democratic Council, desire to print material relating to their preprimary endorsements on the form of notice prescribed by one of the subject statutes, namely, that it be in type or lettering at least half as large as the type or lettering of the statement and set apart from any other printed matter in a drawn or printed box. It is further alleged that any attempt to print or distribute literature in violation thereof subjects plaintiffs to restraint by injunction and the possible application of penal sanctions, thus inhibiting them in the exercise of their political rights.

Plaintiffs first assert that the legislative measures in question infringe on freedom of speech and of the press as guaranteed by the federal and state Constitutions—this, in addition to the restraint said to be imposed on their right of free association in the electoral process, citing *Fort* v. *Civil Service Com.*, 61 Cal.2d 331, 334-335 [38 Cal.Rptr. 625, 392 P.2d 385]. We find this contention untenable. While our state Constitution declares that ''All political power is inherent in the people'' (Cal. Const., art. I, § 2), we are here concerned with laws enacted pursuant to a constitutional amendment which expressly empowers the Legislature to establish tests governing the right of political parties to participate in primary elections. (Cal. Const., art. II, § 2½.) The broad regulatory power thus given includes authority ''to determine the tests and conditions upon which electors, political parties, or organizations of electors may participate in any such primary election.'' Almost 50 years ago, in *Heney* v. *Jordan*, 179 Cal. 24, 27-28 [175 P. 402], the court declared that ''the question as to what provisions are essential to attain the objects contemplated by section 2½, article II, of the constitution, is one peculiarly within the domain of the legislative department, which is practically given plenary power in the matter, that the presumption is in favor of the validity of any provision made, and that if there is any theory upon which the provision might reasonably have been concluded by the legislature to be essential, the courts may not interfere.''

It may not fairly be argued that the statutes under attack do not serve to attain the legitimate objective of requiring, as was stated in *Heney, supra,* that ''all party nominations to be made directly by the members of the party at a primary election.'' (P. 31.) Such nominations cannot intel-

ligently be forthcoming when there is doubt and confusion as to whether preprimary endorsements are those of an official governing body of a political party or otherwise. Indeed, section 8602 of the Elections Code (specifically exempted from challenge) prohibits even official governing bodies of political parties, formally listed in the statute, from endorsing any candidate for partisan office in the direct primary. In this connection, the Legislature went to the lengths of adopting certain findings (Elec. Code, § 8601); subdivision (3) thereof finds that ''Over the several years preceding the adoption of this section organizations of electors using as a part of their names the name of a political party qualified to participate in the direct primary election have endorsed candidates for nomination of that party . . . and have publicized and promulgated such endorsements in a manner which has resulted in considerable public doubt and confusion as to whether such endorsements are those of a private group of citizens or of an official governing body of a political party.'' ▮ Not only must we assume that the Legislature has realistically and by reasonable means attempted to remedy, in the public interest, a situation which it found to be particularly prevalent (*Lelande* v. *Lowery*, 26 Cal.2d 224, 234 [157 P.2d 639, 175 A.L.R. 1109]), but we are faced with the ''conclusive presumption'' that ''the governor and the legislature have performed their duty, and ascertained the existence of the fact before enacting or approving the law . . . .'' (*Smith* v. *Mathews*, 155 Cal. 752, 756 [103 P. 199].)

There is also a finding by the Legislature (Elec. Code, § 8601, subd. (4)) that ''The voting public is entitled to protection by law from deception in political campaigns in the same manner and for the same reasons that it is entitled to protection from deception by advertisers of commercial products.'' Over the years, of course, there has been considerable decisional law supporting the police power of legislative bodies to prohibit deceptive or misleading statements as they pertain to commercial advertising. See *Serve Yourself Gas etc. Assn.* v. *Brock*, 39 Cal.2d 813 [249 P.2d 545], and cases there cited. Even if literally true, the statements may be actually misleading and subject to regulation. (*Donaldson* v. *Read Magazine, Inc.*, 333 U.S. 178 [68 S.Ct. 591, 92 L.Ed. 628].) Too, misleading statements may be prohibited even if published without any fraudulent intent. (*Dodge Stationery Co.* v. *Dodge*, 145 Cal. 380 [78 P. 879].) While cited by the parties to no statute or decision directly in point, we are not per-

suaded (as appellants urge us to hold) that the above analogy by the Legislature is an unreasonable one. True, "votes are not oleomargarine," but the analogy bears a reasonable relationship to the objectives to be attained by the legislation in question.

But, say appellants, under the guise of preventing the dissemination of misleading literature the present legislation constitutes a form of "self-censorship." They cite *New York Times Co.* v. *Sullivan,* 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed. 2d 686], which uses the terminology just quoted, for the claim that such censorship is to be avoided because "it dampens the vigor and limits the variety of public debate." The cited decision is also relied on by appellants for the contention that sections 8603-8605 cannot "be justified in the interest of preventing even an implication of falsehood." The *Times* case, however, which struck down an Alabama libel statute is distinguishable from our case. In the first place, it was concerned with the contents of a publication, not the identity or status of the author. A second distinction is pointed out in *Canon* v. *Justice Court,* 61 Cal.2d 446 [39 Cal.Rptr. 228, 393 P.2d 428], where the court was confronted with another disclosure, namely, section 12047 of the Elections Code.[2] After according recognition to the consideration noted in the *Times* case, *supra,* that it is "of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages," the court declared: "There is a crucial difference, however, between the interests at stake in a libel case and those involved in the enforcement of a purity of elections statute. In the former, we juxtapose against free speech the risk of harm to the reputation of an individual. . . . However, the disclosure requirement of section 12047 does far more than protect the reputation of candidates. It furthers the very ends sought to be achieved through the right of free speech, to wit, 'that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means.' [Citations.] This end is attained when the will of the people is an undeceived, well-informed will."

[2] Section 12047, briefly, makes it a misdemeanor for any person to write or distribute any material designed to injure or defeat any candidate for public office unless such material discloses in a conspicuous place thereon the name and address of the officers of the organization so issuing the material, or the name and address of "some voter of this State," if any, who is responsible for it. Solely on the ground that it applied only to voters and thus resulted in an arbitrary classification, the statute was held invalid.

(P. 458.) The statute was held to pass "the freedom of speech barricade." (P. 460.)

█ Finally, with respect to the guarantees of free speech and of the press, it should be emphasized that the sections do not curtail the right to endorse any candidate; they merely require that the use of the name of a political party not mislead the voters. In other words, the use of the political party's name is not prohibited, but only the use of that name in a manner that might tend to create a misimpression, albeit wholly unintended. These requirements do not violate the right of free speech. To the contrary, they serve a legitimate governmental interest and thus distinguish the present proceeding from such cases as *National Assn. For Advancement of Colored People* v. *Alabama,* 357 U.S. 449 [78 S.Ct. 1163, 2 L.Ed.2d 1488] and *Bates* v. *Little Rock,* 361 U.S. 516 [80 S. Ct. 412, 4 L.Ed.2d 480], relied on by appellants; as pointed out in *Canon* v. *Justice Court, supra,* 61 Cal.2d 446, 455, "in those cases 'there was no showing of any danger inherent in concealment, no showing that the State, in seeking disclosure, was attempting to cope with any perceived danger.' "

█ It is also urged that sections 8603-8606 are violative of due process in that they do not prevent the evil which the Legislature by their enactment sought to curb. Appellants assert: ". . . If the evil which is troubling the legislature is deception, it may be reached by easily drafted legislation: Forbid the intentional fraud of stating that a group is the official party." They further assert that "no 'public doubt or confusion' about pre-primary endorsements by bona fide volunteer groups has ever come within the area of legislative investigation." The simple answer to the above claim and assertions is that the Legislature has expressly determined that statements of the kind proscribed do in fact tend to confuse the voting public. (Elec. Code, § 8601, subd. (3).) We must conclusively presume that the executive and legislative branches "have performed their duty, and ascertained the existence of the fact before enacting or approving the law. . . ." (*Smith* v. *Mathews, supra,* 155 Cal. 752, 756.)

Next, it is contended that the notice requirements found in the challenged sections impose a heavy unconstitutional burden on persons seeking to publicize preprimary endorsements. Pointing out that the legislation authorizes the use of an injunction, appellants complain that such preventive proceedings may be initiated after a large amount of money has been spent, the printed matter is ready for distribution,

or just before the billboards are posted. The legislation, appellants also contend, creates a presumption of guilt by the finding that a certain type of publication has confused the voting public. ■ Lastly, and cases said to support the claim are cited, it is argued that burdens which inhibit publication or create pressures (such as criminal sanctions) against persons so publishing violate the First Amendment. It is settled, however, that the constitutionality of a statute depends upon whether the benefit to the public outweighs the burden on the individual. Said the court in *Canon* v. *Justice Court, supra,* 61 Cal.2d 446, 456: ''The crucial question, then, is whether the end to be achieved by the disclosure requirement justifies the resulting impairment of freedom of expression. ■ Certainly, not every infringement upon freedom of speech, of whatever degree and without regard to any countervailing interest, is constitutionally forbidden.'' ■ The Legislature has determined the danger inherent in the proscribed form of endorsement; we cannot say that it does not outweigh what the realities tell us would be a minor economic burden. ■ Nor does the power to resort to the injunctive remedy make the legislation unconstitutionally burdensome. The manner in which the several prohibitions are enforced is peculiarly within the discretion of the Legislature. (*Kingsley Books, Inc.* v. *Brown,* 354 U.S. 436 [77 S.Ct. 1325, 1 L. Ed.2d 1469].) The same case is also authority for the rule that it is a matter within the legislative body's range of choice whether enforcement be had by a criminal prosecution or by an injunction or by both of these remedies. ■ Finally, contrary to appellants' suggestion, section 8601 creates no presumption of guilt. A legislative finding that some type of publication creates confusion or doubt in the minds of voters does not establish a presumption that a certain person or organization has printed or distributed such material.

■ It is also asserted that the legislation arbitrarily discriminates against a special class of citizens. Specifically, if the group of citizens uses their individual names, describing themselves as Democrats or Republicans, they escape the force of the statute; if, however, they use a collective name, they must comply with the challenged legislation. Too, the legislation is not applicable to organizations which do not have the name of a political party, such as organized labor groups and veterans organizations. As for the first of the above claims, section 8602 (which is not challenged) prohibits deception by an express statement and applies to all individuals

or organizations: ". . . No candidate for such nomination shall claim, nor *shall any other person claim on his behalf,* that he is the official candidate or the officially endorsed candidate of that party." (Italics added.) ▋ With regard to the second of the two arguments, the requirement that a misleading impression be corrected (as provided by sections 8603-8606) is applicable to all those organizations whose names mislead by the inclusion therein of a political party's name or a derivative thereof.[3] ▋ Further dispositive of the point is the failure of appellants "to recognize the rule that, when a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification" (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 289 [32 Cal.Rptr. 830, 384 P.2d 158]) ; and, as already discussed, the Legislature has made a finding as to the existence of the pertinent facts.

There is likewise no merit to appellants' claim that sections 8603 and 8606 are unconstitutionally vague and indefinite. The governing standard was recently restated in *Canon* v. *Justice Court, supra,* 61 Cal.2d 446, 450: "The language of the section is understandable to people of ordinary intelligence and gives adequate warning of the conduct proscribed. . . . 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.' [Citations.]" ▋ Any endorsement by California Democratic Council would clearly fall within the provisions of the challenged statutes; in view of this determination, we do not consider several hypothetical situations posed by appellants which could concern them in light of their admitted status.

▋ Finally, it is asserted that the legislation invades a field preempted by Congress. They rely on section 326, title 47, United States Code, and *Allen B. Dumont Laboratories* v. *Carroll,* 184 F.2d 153. Section 326 provides that the Federal Communications Commission has no censorship power over radio communications, nor the power to make regulations interfering with the right of free speech by means of radio. While there is broad language in the *Dumont* case to the

---

[3]For purposes of illustration, respondents point out, "An endorsement by the Richard Roe Club . . . would not tend to imply that either the endorsement or the club was official. . . ."

effect that Congress has occupied the field of television regulation (and that said field is no longer open to the several States), a later Supreme Court decision, comparing the *Dumont* case, notes that the holding in *Dumont* was the narrow one of deciding that state censorship of motion pictures (shown on television) was preempted by a federal statute dealing with communications containing profane or obscene words. (*Head* v. *New Mexico Board of Examiners In Optometry,* 374 U.S. 424, 431 (footnote 10) [83 S.Ct. 1759, 10 L.Ed.2d 983].) There are no provisions of the Federal Communications Act which deal with preprimary endorsements, a matter of peculiar state concern; nor have we been cited to any other federal statute which can be said to conflict with the subject legislation. This last contention, therefore, cannot be sustained.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 23, 1965, and appellants' petition for a hearing by the Supreme Court was denied June 2, 1965.