[Civ. No. 47927. First Dist., Div. Two. Feb. 27, 1980.]

SAMUEL UNGER, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
MARIN COUNTY DEMOCRATIC CENTRAL COMMITTEE,
Real Party in Interest.

**COUNSEL**

Lynn S. Carman for Petitioner.

No appearance for Respondent.

Herbert G. Hawkins and Hawkins & Petersen for Real Party in Interest.

OPINION

**MILLER, J.**—In this extraordinary writ proceeding, we consider whether article II, section 6 of the California Constitution prohibits a county central committee of a political party from indorsing, supporting or opposing a candidate for a school office.

Article II, section 6 of the California Constitution provides: "Judicial, school, county, and city offices shall be nonpartisan."

The salient facts are undisputed. Petitioner Samuel Unger is a resident and registered voter of the County of Marin and was a duly qualified candidate on the ballot for election as a member of the governing board of the Marin Community College District at the November 6, 1979, election. On or about September 1, 1979, real party in interest Marin County Democratic Central Committee, a county central committee created pursuant to Elections Code section 8820 et seq., invited all registered Democrats who were candidates for the governing board of the district to attend a September 6, 1979, meeting of the county central committee to seek the indorsement of the county central committee for the office and to apply for financial assistance.[1] Petitioner neither attended the meeting nor sought the endorsement or assistance of the county central committee. On September 6, 1979, the county central committee did in fact indorse four registered Democrats (out of six registered Democrats, four registered Republicans and three registered Independents) for the vacancies on the governing board to be filled at the November 6, 1979, election. The county central committee subsequently sent letters to unsuccessful applicants, publicly announced the indorsement of the four candidates, and planned to make "small" financial contributions to the candidates it had indorsed.

On September 12, 1979, petitioner filed a verified petition in respondent court seeking relief by mandate or by injunction to enjoin the county central committee from indorsing or supporting candidates for the nonpartisan office of member of the governing board of the district in the forthcoming November election and in all future elections for such nonpartisan office on the ground that the county central commit-

---

[1]Section 8500 et seq. of the Elections Code contains provisions governing the organization, operation, and functions of that political party known as the Democratic Party of California. Similar provisions exist for the Republican Party of California (§ 9000 et seq.), the American Independent Party of California (§ 9600 et seq.), and the Peace and Freedom Party of California (§ 9750 et seq.).

tee's activities violated article II, section 6 of the California Constitution and section 37 of the Elections Code.[2] Petitioner alleged that the conduct of the county central committee was causing great and irreparable injury to him in his capacity as resident, registered voter and candidate for the governing board of the district, an injury which was continuing and for which he had no plain, adequate or speedy remedy other than in the proceeding instituted by him.

On September 27, 1979, respondent court sustained a demurrer to the action without leave to amend and ordered that the action be dismissed.[3] Although the order of dismissal is a final judgment (Code Civ. Proc., § 581d) which is appealable (Code Civ. Proc., § 904.1), petitioner sought review by extraordinary writ, contending that appeal was not an adequate remedy in that he needed relief prior to the November 6, 1979, election. The issue of the absence of an adequate remedy in the ordinary course of law has been determined by the Supreme Court in its order directing the issuance of an alternative writ of mandate to be heard before this court. (*Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224].)

In its return to the alternative writ, real party does not deny that it had engaged in the conduct objected to by petitioner; real party contends that its conduct was in conformance with accepted practice which it believed to be proper. Real party has submitted declarations attesting to the fact that the county central committees have been openly indorsing and supporting candidates for nonpartisan office for many years. The declarations show that the practice is widespread in the San Francisco Bay Area.[4]

---

[2]Section 37 of the Elections Code provides: "'Nonpartisan office' means an office for which no party may nominate a candidate. Judicial, school, county and municipal offices are nonpartisan offices."

[3]The demurrer was based on two grounds: (1) that the complaint did not state a cause of action, and (2) that the complaint was uncertain.

[4]The declaration of Agar Jaicks, chairman of the Democratic Central Committee for the City and County of San Francisco, avers that the San Francisco central committee has been indorsing and actively supporting candidates for the nonpartisan offices of mayor, board of supervisor, board of education, community college board and judge since 1967. The declaration of Sal Bianco, chairman of the Santa Clara County Democratic Central Committee, avers that the Santa Clara County central committee has been indorsing candidates for nonpartisan offices since 1972. The declaration of Mary Warren, chairperson of the Alameda County Democratic Central Committee, avers that over the past 5 years the Alameda County central committee has indorsed at least

Before examining the provisions of article II, section 6 of the Constitution (added to the Const. as § 5 in 1972 and renumbered § 6 in 1976), we note that the Constitution furnishes a rule for its own construction. ■ That rule, unchanged since its enactment in 1879, is that constitutional provisions are "mandatory and prohibitory, unless by express words they are declared to be otherwise." (Art. I, § 26, Cal. Const.)[5] The rule applies to all sections of the Constitution alike and is binding upon all branches of the state government, including this court, in its construction of the provisions of article II, section 6. (*State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 460-461 [343 P.2d 8].)

Section 26 of article I "'not only commands that its provisions shall be obeyed, but that disobedience of them is prohibited. Under the stress of this rule, it is the duty of this court to give effect to every clause and word of the constitution, and to take care that it shall not be frittered away by subtle or refined or ingenious speculation. The people use plain language in their organic law to express their intent in language which cannot be misunderstood, and *we must hold that they meant what they said.*'...[Citation.]" (*State Board of Education* v. *Levit, supra*, at p. 460, italics added.)

Applying the foregoing rule of construction, the language of the constitutional provision is plain, explicit and free from ambiguity. "There is no necessity or opportunity to resort to judicial construction to ascertain its meaning. When the facts in any particular case come within its provisions it is the duty of the court to apply and enforce it." (*French* v. *Jordan* (1946) 28 Cal.2d 765, 767 [172 P.2d 46].)

It cannot be denied that the office for which petitioner was a candidate was a "school" office within the meaning of the constitutional provision. "Nonpartisan" is defined as "not affiliated with or committed to the support of a particular political party: politically independent... viewing matters or policies without party bias...held or organized with all party designations or emblems absent from the ballot...composed, appointed, or elected without regard to the political party affiliations of members..." (Webster's New Internat. Dict. (3d ed. 1965).)

---

100 candidates for the nonpartisan offices of supervisor, city council member, school board member and judge.

[5]Present section 26 of article I appeared as section 22 thereof in the Constitution of 1879. It was repealed and readopted, as section 28 but otherwise unchanged, by vote of the people on November 5, 1974; on June 8, 1976, it was renumbered as section 26.

■ In light of the foregoing, we hold that the explicit and unqualified language of article II, section 6 prohibits a political party and, in particular, a county central committee of a political party, from indorsing, supporting, or opposing a candidate for the office of governing member of the board of a community college district, a nonpartisan school office within the meaning of the constitutional provision, in any election.[6]

Real party acknowledges that it is prohibited by the "Truth in Endorsements Law" (Elec. Code, § 11700 et seq.) from indorsing, supporting, or opposing any candidate for nomination for partisan office in the direct primary election, but suggests that if the doctrine of *expressio unius est exclusio alterius* is applied, section 11702 constitutes the sole limitation upon its activities, and that it may participate in nonpartisan elections.[7]

We do not agree. Former article II, section 2-1/2, in which the "Truth in Endorsements Law" finds its genesis, expressly empowered the Legislature to regulate the manner in which political parties could participate in the direct primary election. (*Cal. Democratic Council* v. *Arnebergh* (1965) 233 Cal.App.2d 425 [43 Cal.Rptr. 531].)[8] Reasonable regulation pursuant to such a constitutional grant in order to prevent evils which formerly had been prevalent does not infringe on freedom of speech or association guaranteed by the federal and state Constitutions (*Cal. Democratic Council* v. *Arnebergh, supra*, at p. 429; petn. for hg. den.; app. dism. for want of a substantial federal question, 382 U.S. 202 [15 L.Ed.2d 269, 86 S.Ct. 395]), nor does such regulation, even to the extent that it excludes parties and individuals from

---

[6]Section 19 of the Elections Code provides that "'Election' means any election, including a primary which is provided for under the provisions of this code."

[7]Section 11702 of the Elections Code provides: "The state convention, state central committee, and the county central committee in each county are the official governing bodies of a party qualified to participate in the direct primary election. The state convention, state central committee, and the county central committee in each county shall not endorse, support, or oppose, any candidate for nomination by that party for partisan office in the direct primary election." Any registered voter may apply to the superior court for a restraining order or injunction in the event of a violation of this chapter. (Elec. Code, § 11706.)

[8]In 1963, at the time the "Truth in Endorsements Law" was enacted, former article II, section 2-1/2 provided that "[t]he legislature shall have the power...to determine the tests and conditions upon which electors, political parties, or organizations of electors may participate in any...primary election." Former article II, section 2-1/2 was repealed November 7, 1972, and superseded by article II, section 5 which provides in relevant part, "[t]he Legislature shall provide for primary elections for partisan offices...."

participating in primary elections under certain conditions, restrict the constitutional right of suffrage. (*Communist Party* v. *Peek* (1942) 20 Cal.2d 536, 544-545 [127 P.2d 889].)[9]

In a nonpartisan election, "the party system is not an integral part of the elective machinery and the individual's right of suffrage is in no way impaired by the fact that he cannot exercise his right through a party organization." (*Communist Party* v. *Peek, supra*, at p. 544.) The evils of partisanship in certain offices are well illustrated in *Moon* v. *Halverson* (1939) 206 Minn. 331 [288 N.W. 579, 581-582, 125 A.L.R. 1041] (conc. opn. of Loring, J.). No constitutional provision was at issue in *Moon*; here, by constitutional command, the People have directed that certain offices *shall* be nonpartisan. The provisions of article II, section 6, unlike the provisions of former article II, section 2-1/2, are self-executing; these provisions will be given effect without implementing legislation. (*Chesney* v. *Byram* (1940) 15 Cal.2d 460, 463 [101 P.2d 1106]; *Taylor* v. *Madigan* (1975) 53 Cal.App.3d 943, 950-952 [126 Cal.Rptr. 376].)[10] Although the Legislature may enact legislation to implement a self-executing provision of the Constitution (*Chesney* v. *Byram, supra*, at p. 463), "''[i]t is not and will not be questioned but that...it is not within the legislative power, either by its silence or by direct enactment, to modify, curtail or abridge this constitutional grant." [Citations.]'" (*Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 154 [145 Cal.Rptr. 573].)

Legislative inaction can in no manner qualify constitutional provisions capable of self-execution whose language adequately sets forth the rule through which the duty imposed may be enforced. (*Flood* v. *Riggs, supra*, at p. 155.) Moreover, the constitutional grant constitutes a restraint upon the law-making powers of the state, and legislative enactments contrary to its provisions are void. (*Sail'er Inn., Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 8 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

---

[9]Real party has acknowledged that it is bound by section 11702 of the Elections Code (*ante*, at p. 686, and fn. 7), which is not here under attack (see *People* v. *Crutcher* (1968) 262 Cal.App.2d 750, 752-753 [68 Cal.Rptr. 904], but see *Abrams* v. *Reno* (S.D.Fla. 1978) 452 F.Supp. 1166, a decision of a lower federal court by which this court is not bound (*People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129])).

[10]A constitutional provision may be said to be self-executing "if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." (*Chesney* v. *Byram, supra*, at p. 462; *Taylor* v. *Madigan, supra*, at p. 950, fn. 3.)

We also disapprove the opinion of the Attorney General relied upon by real party (59 Ops.Cal.Atty.Gen. 60 (1976)) to the extent that it is inconsistent with the constitutional mandate herein expressed. (3) Although opinions of the Attorney General, who is charged with the duty to enforce the law, are entitled to great weight, the opinions of the Attorney General are not controlling as to the meaning of a constitutional provision or statute. (*Smith* v. *Municipal Court* (1959) 167 Cal.App.2d 534, 539 [334 P.2d 931].)

Because this case poses a question which is of broad public interest, is likely to recur, and should receive uniform resolution throughout the state, we have undertaken to resolve the issue raised by petitioner even though an event occurring during its pendency would normally render the matter moot. (*Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719-720 [94 Cal.Rptr. 602, 484 P.2d 578].) Although we have concluded that petitioner's complaint stated a proper cause against the demurrer, it is obvious that by reason of the election of November 6, 1979, having taken place, this court cannot grant the relief sought by petitioner (*Kagan* v. *Kearney* (1978) 85 Cal.App.3d 1010, 1014 [149 Cal.Rptr. 867]; *Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 372 [122 Cal.Rptr. 732]), and we deem it unlikely that real party, having been apprised of this decision, will repeat the conduct which precipitated this proceeding.

The alternative writ, having served its purpose, is discharged, and the peremptory writ is denied. All other relief sought by petitioner is denied.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 28, 1980, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied May 22, 1980. Mosk, J., and Newman, J., were of the opinion that the application should be granted.