[L.A. No. 31548. Oct. 18, 1982.]

LEWIS COLLIN MOORE, Petitioner, v.
LEONARD PANISH, as Registrar of Voters, etc., Respondent.

536

**COUNSEL**

Zetterberg & Zetterberg, Funglan Persimmon and Stephen I. Zetterberg for Petitioner.

John H. Larson, County Counsel, Philip H. Hickok and Tighe F. Hudson, Deputy County Counsel, for Respondent.

**OPINION**

**REYNOSO, J.**—The sole issue in this mandate proceeding is whether section 6402, subdivision (b) of the Elections Code[1] prohibits petitioner

---

[1]All statutory references are to the California Elections Code unless otherwise specified.

from seeking election to his party's county central committee and to the board of directors of a nonpartisan municipal water district at the same primary election.

 We conclude that section 6402, by its terms, does not apply to selection of party county central committees. It follows that subdivision (b), which serves only to limit its application, as well does not apply to such a committee office. (See *Narver* v. *Jordan* (1916) 173 Cal. 424 [160 P. 245].)

The county advances three arguments in support of its position that the statute proscribes candidacy for both offices: (1) membership in the party central committee is a public office, thus, the statutory proscription applies; (2) there is need for certainty as to which office the candidate will accept; and (3) partisan and nonpartisan candidates should not be commingled. None of these arguments causes us to depart from our conclusion that the statute was not intended to restrict a candidate from running for party county central committee offices or to limit the field of candidates from which the voters might choose.[2] Respondent has read entirely too much into the language of the section.[3]

---

[2]While neither party has characterized this as an "access" case, "laws that affect candidates always have at least some theoretical, correlative effect on voters. . . . [B]arriers to candidate access to the primary ballot . . . tend[ ] to limit the field of candidates from which voters might choose." (*Bullock* v. *Carter* (1971) 405 U.S. 134, 143 [31 L.Ed.2d 92, 99-100, 92 S.Ct. 849]; see also, *Williams* v. *Rhodes* (1968) 393 U.S. 23, 30-31 [21 L.Ed.2d 24, 31, 89 S.Ct. 5].)

[3]The dissent, I respectfully suggest, reads even more into the statute. Respondent expressly declined to urge that the offices are incompatible. At oral argument respondent conceded that a person could serve in both offices if elected at different elections and could even be elected at the same election if one office was obtained through the write-in process. Yet the dissent, in substance, rests on that unwanted argument. The analysis of respondent appears to have led it, as it does us, to the conclusion that neither history nor the legislative scheme can support such an argument.

First, let us look at history. As early as 1952 our courts declined to hold that an office of a political party is a public office. (*Stout* v. *Democratic County Central Comm.* (1952) 40 Cal.2d 91 [251 P.2d 321].) Again in 1965 it was so held. (*Azevedo* v. *Jordan* (1965) 237 Cal.App.2d 521 [47 Cal.Rptr. 125].) Nor has the law been uniformly applied. As the petition notes, the practice in Orange County is to allow candidates to file nomination papers for both of the offices at issue here. Thus, despite the Attorney General opinions, the law has not been clearly established in respondent's favor.

Second, let us look at the legislative scheme. Of course, membership in the central committee is manifestly an *office*—the issue is whether it is a *public office within the statutory scheme*. This court long ago held that the language at issue served a limited purpose. (*Narver* v. *Jordan, supra,* 173 Cal. 424.) As discussed more fully in the text (*infra,* at pp. 544-545) the attributes of public offices and those of party offices are quite distinct. Thus, we are persuaded that the statute does not apply to limit candidacy for membership on central committees.

I

Petitioner, currently a member of the Los Angeles County Democratic Central Committee and of the Board of Directors of the Three Valleys Municipal Water District, sought reelection to both positions in the June primary election. He met the statutory party membership and residency requirements of the respective offices. There is no question that he timely tendered completed nomination papers for each office to the Los Angeles County Registrar of Voters in March of this year.

The respondent agreed to place petitioner's name on the ballot for the water district position but refused to accept nomination papers for the party committee position. Respondent acted on the advice of county counsel. He had warned petitioner he would not accept both nominations shortly after petitioner obtained the papers for circulation in February. County counsel informed petitioner that the refusal was based on section 6402, subdivision (b). County counsel interprets the subdivision's language that "No person may file nomination papers . . . for more than one office at the same election" to bar a candidate from running at the same primary election both for membership on a party's county central committee and for the directorship of a municipal water district.

The same conflict arose between the parties in 1978 when petitioner sought to have his name placed on the June primary ballot as candidate for the same offices. (The water district was then called the Ponoma Valley Municipal Water District.) Upon respondent's refusal petitioner sought and obtained a writ of mandate from the Los Angeles County Superior Court permitting him to run for election to both positions. He was elected to both and was reelected to the party central committee in 1980.

When respondent refused petitioner's present tender of papers, petitioner again sought a writ of mandate. He urged that the disposition of the 1978 case served to collaterally estop the court from reaching a different result. He further asserted that committee membership is not a public office for purposes of section 6402, subdivision (b).[4] ▇ ▇▇▇ After

---

[4] Petitioner makes two further contentions which we do not reach.

First, he argues that selection of committee membership and water district directors do not occur at the same election. The basis for this argument is that committee membership is selected only during the primary. However, the water district directors are subject to a run-off election in the general election. Second, petitioner urges a constitutional argument. The Peace and Freedom Party is provided by statute (§ 9775) with special treatment regarding committee membership. Unlike the Democratic, Republican and American Independent Parties, a candidate for a partisan public office is not precluded

hearing, the superior court denied a writ of mandate without stating its reasons.[5] We issued an alternative writ and ordered that petitioner's name be placed on the ballot as a candidate for the Democratic Party County Central Committee. We later ordered that the votes cast for petitioner be counted, but that no certificate of election issue unless ordered by this court.

## II

Respondent does not dispute that petitioner has met all statutory requirements for nomination to both positions, save for compliance with section 6402, subdivision (b).

Section 6402 provides: "This chapter [pertaining to direct primary election] does not prohibit the independent nomination of candidates under the provisions of Chapter 6 (commencing at section 6800) of this division, subject to the following limitations:

"(a) A candidate whose name has been on the ballot as a candidate of a party at the direct primary and who has been defeated for that party nomination is ineligible for nomination as an independent candidate. He is also ineligible as a candidate named by a party central committee to fill a vacancy on the ballot for a general election.

---

from being on the ballot for the committee post. Again, we need not reach that argument in light of our analysis and conclusion.

[5]The prior final judgment between the instant parties (L.A. Super. Ct. No. C234264) necessarily determined the same legal question presented in this action: whether section 6402, subdivision (b) precludes petitioner's dual candidacy for the offices currently at issue. Such a judgment may be given conclusive effect as to a question of law raised in a subsequent action where both causes of action arise out of the same subject matter or transaction. (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749 [22 Cal.Rptr. 14, 371 P.2d 758].) However, where injustice would result either because of the effect upon third persons or because the public interest requires full litigation, the doctrine may not be applied. (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 230 [123 Cal.Rptr. 1, 537 P.2d 1250].)

The doctrine of collateral estoppel was considered possibly applicable in *Louis Stores, supra,* 57 Cal.2d 749 where the events upon which the subsequent litigation was based occurred after the initial litigation but the challenged practice was in all relevant legal and factual respects the same. This court declined to apply the doctrine, however, reasoning that precluding the courts from reexamining the statute and its proper application would not serve the public interest and might work an injustice on third parties. (See *id.,* at pp. 756-759.) Respondent denies that the same issue was fully litigated in the prior action. The record before us, however, indicates that while the actual events were necessarily different, respondent's practice was in all relevant respects the same. Respondent also urges that estoppel should not work here because the public interest demands full litigation of the issues.

Judicial resolution of the instant dispute requires a court to announce a rule of law which will apply to persons other than the litigants here. The rule might well be challenged in the future. It would not be fair, under these circumstances, for us to prevent these parties from litigating the merits of the issue because of a prior judgment between them. (See, Rest.2d, Judgments, § 28.) Accordingly, we reach the merits.

"(b) No person may file nomination papers for a party nomination and an independent nomination for the same office, or for more than one office at the same election."

■ The fundamental rule of statutory construction is that the court should ascertain the legislative intent so as to effectuate the purpose of the law. To this end, every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640 [335 P.2d 672].) Accordingly, we examine section 6402 and its subdivision (b) in the context of the Elections Code.

Section 6402 is found in chapter 5, titled "Direct Primary," which is part of division 6 pertaining to nominations. The language has been part of California's election laws since enactment of the 1913 Direct Primary Law. (Stats. 1913, ch. 690, § 5, subd. 8, p. 1391.)

A direct primary is defined as "the primary election . . . to nominate candidates to be voted for at the ensuing general election or to elect members of a party central committee." (§ 23; see also Stats. 1913, ch. 690, § 1, subd. 2, p. 1380.) Candidates for nonpartisan as well as partisan offices are selected. (§§ 6400, 6401; Stats. 1913, ch. 690, § 2, pp. 1381-1392.)[6]

The institution of the direct primary system was not meant to prevent nomination of candidates by means of an independently circulated petition (see §§ 6402, 6800 et seq.). ■ However, section 6402 places certain limitations on the process of independent nomination "subsequent to or in lieu of a primary election" pursuant to section 6800 et seq. Interpreting language of the 1913 Direct Primary Law which was nearly identical to the language of current section 6402, this court said: "It seems clear to us that the only reasonable construction that can be given to this provision is that it has reference only to attempted nominations under section 1188 of the Political Code 'subsequent to' or 'in lieu of any primary election.' [Now § 6800 et seq.]" (*Narver* v. *Jordan, supra,* 173 Cal. at pp. 426-427.)[7]

---

[6]As to nonpartisan offices the primary election is deemed a general election if a candidate receives votes on a majority of all ballots cast for the office to which he or she seeks nomination. Such a candidate is elected. (§ 6611; *Fields* v. *Eu* (1976) 18 Cal.3d 322, 325, fn. 1 [134 Cal.Rptr. 367, 556 P.2d 729]; see also Stats. 1913, ch. 690, § 23, p. 1404.) The latter provision applies to candidates for directorship of a municipal water district (Wat. Code, §§ 71450-71451, 71502-71505).

[7]Section 5, subdivision 4 of the 1913 law contained other language relating to dual candidacy: "Nothing in this act . . . shall be construed to limit the rights of any person

The code contemplates independent nomination of candidates for both partisan and nonpartisan public offices (see § 6800). Members of county central committees of the four qualified political parties, however, are *to be elected* at every direct primary election. (§§ 8870, 9370, 9720, 9760.) Any vacancies are to be filled by appointment of those who are elected at the primary election. (§§ 8829, 9329, 9706, 9831.) Thus, it is apparent that the code does not provide for nomination of committee candidates "subsequent to or in lieu of a primary election." Applying the analysis of *Narver* v. *Jordan, supra,* 173 Cal. 424, it follows that section 6402 and its subdivisions cannot apply to candidates for party county central committees.

The courts have long recognized the dual purposes of the direct primary law: (1) to enable the members of a given political party to name directly the party's nominee's for public office, rather than selecting candidates through delegates to a party convention (*Socialist Party* v. *Uhl* (1909) 155 Cal. 776 [103 P. 181] (conc. opn. of Angellotti, J., at p. 795 [construing the 1909 Direct Primary Law]); *Edwards* v. *Jordan* (1920) 183 Cal. 791, 795-796 [192 P. 856]); and (2) to preserve the integrity of the parties by limiting the right to participate in the primary to persons who are committed to the principles of the party, sympathetic with its aims and loyal to its tenets (*Socialist Party* v. *Uhl, supra,* 155 Cal. at pp. 792-793; *Independent Progressive Party* v. *County Clerks* (1948) 31 Cal.2d 549, 552 [191 P.2d 6]). Restrictions on the independent nomination process which have always appeared in section 6402 effectuate these purposes.[8] Applying the statute to prevent a person from seeking election to the party office and nomination to the nonpartisan office at issue here, however, has nothing to do with these purposes.

---

to become the candidate of more than one political party for the same office . . . but no person shall be entitled to become a candidate for more than one office at the same election." This language was deleted from the act in 1929 (Stats. 1929, ch. 250, p. 495) and has not been reenacted. Cross-filing was finally abolished in 1959 (Stats. 1959, ch. 284).

[8]The statute has consistently prohibited a candidate who is defeated in a primary bid for the party nomination from seeking a place on the general election ballot through the independent nomination process (§ 6402, subd. (a); Stats. 1913, ch. 690, § 5, subd. 8, at pp. 1390-1391; *Narver* v. *Jordan* (1920) 173 Cal. 424, 426 [160 P. 245]). (§ 6400, subd. (b) makes the restriction inapplicable to presidential primaries.) The statute has also prohibited a single candidate from filing nomination papers for a party and an independent nomination for the same office. *(Ibid.)*

Cross-filing for the nominations of two parties for the same office was permitted by the 1913 statute (Stats. 1913, ch. 690, § 5, subd. 4, p. 1389) but was abolished in 1959 (Stats. 1959, ch. 284; see now § 6401).

A statutory proscription against dual candidacy could also serve to prevent a candidate from running for incompatible offices.[9] At oral argument respondent expressly declined to invoke this purpose in the instant case. It does not appear that there is any incompatibility in the offices at issue here. Petitioner has successfully discharged the duties of both positions since 1978. Respondent does not contend this is improper.

Respondent does assert that section 6402, subdivision (b) prevents voter confusion by avoiding uncertainty as to which office a candidate will accept if elected. This argument assumes that the voters would believe the candidate could not perform the duties of both offices. Ultimately, the argument rests on a theory of incompatibility which respondent has declined to invoke. The fact that petitioner currently holds both offices he seeks undercuts the force of respondent's argument that his dual candidacy would create confusion and uncertainty as to which of the offices he would hold if elected.

In his opposition filed below, respondent relied on Attorney General opinions now cited by the dissent which declared party county central committee membership to be an office for purposes of section 6402, subdivision (b). Although the dissent suggests that more than one policy argument supports the interpretation of the Attorney General, the only policy enunciated in the opinions is that of "preventing a conflict in the duties of public officers." (40 Ops.Cal.Atty.Gen. 99 (1962); see also Ops.Cal.Atty.Gen. No. NS-2739 (1940).)

But there is no necessary or apparent conflict in the duties of county central committee members and those of public officers. The Elections Code makes the incumbent office holder or the nominee of a party for the

---

[9] Courts of other states have held that a candidate may not be named on the same ballot for two offices where the candidate would not be permitted to hold both offices if elected, even in the absence of specific statutory language like that in the California statute. In *State* ex rel. *Fair* v. *Adams* (Fla. 1962) 139 So.2d 879 (where a candidate for state railroad and public utilities commissioner sought to become a candidate for state senator and state representative as well) the court reasoned that the candidate could not truthfully make the oath required of candidates that he would fill each office to which he might be elected where the state Constitution prohibited him from holding both offices for which he sought nomination. In *Burns* v. *Wiltse* (1951) 303 N.Y. 319 [102 N.E.2d 569] (where a nominee for district attorney was later nominated for county judge) the court stated that the spirit and intent of the election law forbade dual candidacy where the candidate might not take and hold both offices because of a statutory prohibition. (See generally, 94 A.L.R.2d 557.)

Candidates in California also must declare that they meet all qualifications for the office and that, if nominated, they will accept the nomination and not withdraw. Thus, although our courts have not ruled upon the issue, we believe the logic of the cases from other states would apply to prevent candidates from simultaneously running for incompatible offices in California.

offices of Governor, Lieutenant Governor, Secretary of State, Controller, Treasurer, Attorney General, Member of the State Board of Equalization, and United States Senator from California an ex officio member of the committee in the county in which he or she resides. (§§ 8825, 9325, 9702, 9765.) The code further makes the nominee or incumbent state senator, the nominees for Assembly and United States Representative, and any person elected at a special election to fill a Senate, Assembly, or congressional vacancy an ex officio member of central committees. (§§ 8824, 9324, 9702.)

The code does not ignore the possibility that a state official, a congressman or a state legislator may not always be available for county committee meetings. Unlike elected committee members, ex officio members of three of the four qualified parties are not subject to removal for missing a specified number of meetings. (§§ 8831, 9931; 9708; cf. 9834, pertaining to the Peace and Freedom Party.) Moreover, any committee member may, with the authorization of the other members, appoint an alternate member who may attend meetings and who may vote with the member's written authorization. An incumbent member of the state Legislature may appoint an alternate without authorization from the rest of the committee. (§§ 8826, 9326, 9703; the statutes pertaining to the Peace and Freedom Party contain no such provision.) Thus, an elected public official is not required to abandon his or her post in Sacramento or in Washington in order to perform his or her function as a member of a county central committee. While Attorney General opinions are generally accorded great weight (*Unger* v. *Superior Court* (1980) 102 Cal.App.3d 681 [162 Cal.Rptr. 611]), we do not find their interpretation of the statutory provision at issue persuasive.

 Respondent's argument is essentially that membership in a political party's county central committee is a public office, and that subdivision (b) of section 6402 by its terms proscribes candidacy for more than one public office at a single primary election. As discussed above, we believe that a reading of chapters 5 and 6 of the code shows that section 6402 has no application to selection of members of political party county central committees because the code does not provide for their nomination subsequent to or in lieu of the primary election. Further, we note that California courts have declined to hold that elective offices of political parties are public offices. (*Stout* v. *Democratic County Central Com.* (1952) 40 Cal.2d 91, 94 [251 P.2d 321]; *Azevedo* v. *Jordan* (1965) 237 Cal.App.2d 521, 528 [47 Cal.Rptr. 125]; see also *Spreckels* v. *Graham* (1924) 194 Cal. 516, 527-531 [228 P. 1040] [discussing whether presidential electors are public officers].)

A public office requires the presence of two essential elements: (1) an office which is not transient, occasional or incidental but is in itself an entity in which incumbents succeed one another; and (2) the delegation to the office of some portion of the sovereign functions of government, either legislative, executive or judicial. (*City Council of San Diego* v. *McKinley* (1978) 80 Cal.App.3d 204, 210 [145 Cal.Rptr. 461]; *Spreckels* v. *Graham, supra,* 194 Cal. 516.) Party county central committee members do not exercise any sovereign powers of government. (*Azevedo* v. *Jordan, supra,* 237 Cal.App.2d 521; *Stout* v. *Democratic County Central Com., supra,* 40 Cal.2d 91.) The county committee is charged with conducting the party's political campaigns under the direction of the state party organization. (See §§ 8949, 9440, 9740, 9850.) Though such functions may be considered beneficial to the public insofar as they promote the party system adopted by the state, it is the interplay of the parties within an established framework rather than the specific campaign activities of the individual parties which benefits the public. The functions of party committee members remain those of their particular political party and do not involve the exercise of the sovereign power of the public. (See *Stout* v. *Democratic County Central Com., supra,* 40 Cal.2d at p. 94.) Thus, the courts have recognized that party county central committee membership is in reality an office of a political party. (*Los Angeles County Democratic Central Committee* v. *County of Los Angeles* (1976) 61 Cal.App.3d 335 [132 Cal.Rptr. 43].)[10]

Respondent has cited us to sections of the Elections Code which refer to membership on party county central committees as an "office."[11]

---

[10]We are not unmindful that the federal courts have viewed certain racially discriminatory activities of political parties as state action which violated constitutional guarantees. Even in these cases, however, the courts have refused to characterize political parties as public organizations, but have focused instead on the impact of party primaries and membership rules on the effective exercise of the right to vote. (See *Nixon* v. *Condon* (1932) 286 U.S. 73 [76 L.Ed. 984, 52 S.Ct. 484, 88 A.L.R. 458] [action by party's executive committee constituted state action in violation of the Fourteenth Amendment where the power to exclude persons from voting in the primary on racial grounds was conferred by state statute]: *Smith* v. *Allwright* (1943) 321 U.S. 649 [88 L.Ed. 987, 64 S.Ct. 757, 151 A.L.R. 1110] [party was agency of the state subject to the Fifteenth Amendment "in so far as it determines the participants in a primary election"]: see also *U.S.* v. *Classic* (1941) 313 U.S. 299 [85 L.Ed. 1368, 61 S.Ct. 1031]; *Terry* v. *Adams* (1953) 345 U.S. 461 [97 L.Ed. 1152, 73 S.Ct. 757].) We hold that the prohibition of dual candidacy contained in section 6402, subdivision (b) does not apply to the selection of members to party county central committees, but express no opinion of whether party offices might be considered public for some other purposes.

[11]See, e.g., section 6551, providing for distribution of nominating forms by the county clerk; section 10213, subdivision (f), providing the order of offices on the ballot; and section 10216, subdivision (f), providing the order of candidates' names on the ballot. In section 6551, as well as the other sections mentioned in the dissenting opinion,

The nature of the sections, however, suggests that the term office was used as a matter of convenience rather than as a matter of definition. (See *Spreckels* v. *Graham, supra,* 194 Cal. at p. 532.) Other sections of the code distinguish committee membership from elective public offices. Of particular significance for our purposes is section 6401, which immediately precedes the statute at issue. Section 6401 requires that candidates be affiliated with the party whose nomination or committee membership they seek.[12] At the outset of the chapter governing direct primary elections it distinguishes candidacy for a partisan office from that for membership on a county central committee. (See also § 6464 [providing for publication of a "statement of the offices of judges . . . in the county . . . and a statement of the number of members of the county central committee to be elected . . . ."].)

Respondent urges that the words "Notwithstanding any other provision of this code . . . " in section 9775[13] show a legislative purpose to establish an exception to section 6402, subdivision (b) for the benefit of the Peace and Freedom Party. This "exception" in turn is said to prove that the general rule is that section 6402, subdivision (b) prohibits candidacy for public office and for the county central committee of a political party at the same primary election.

Petitioner asserts that respondent misinterprets the section and that if respondent's interpretation is correct, the special rule pertaining only to the Peace and Freedom Party denies him equal protection of the law.

Respondent's argument does not convince us. Section 9775 pertains to the circulation rather than the filing of nomination papers. (Cf., § 6402, subd. (b).) When construed together with section 9772, it is apparent that section 9775 serves a purpose distinct from the applicability of section

---

the title of the notice refers to "Offices for which candidates are to be nominated or elected. . . ." The listing itself, however, refers to state, congressional, legislative, judicial, etc. *offices* but to *members* of county central committee. (See also, § 6463.)

Respondent also cites Government Code section 82023, which defines "elective office" to include "membership on a county central committee of a qualified political party." This provision applies to title 9 of the Government Code, known as the Political Reform Act of 1974 which requires disclosure of campaign receipts and expenditures, the activities of lobbyists, the assets and income of public officials and the like. (See Gov. Code, §§ 81002, 82000.) It is not dispositive of the application of Elections Code section 6402, subdivision (b).

[12]Section 6401 provides in pertinent part: "No declaration of candidacy for a partisan office or for membership on a county central committee shall be filed, by a candidate unless (1) . . . ."

[13]Section 9775, which regulates election of members to Peace and Freedom Party central committees, provides: "Notwithstanding any other provision of this code, a person may obtain and circulate nomination papers both for nomination to a public office and for election as a member of central committees."

6402, subdivision (b). A Peace and Freedom Party member may become a candidate for the party committee either qualifying as a candidate for the party's nomination to a partisan public office or by circulating nominating papers specifically for the party office (§ 9772). Persons seeking positions on the county committees of all other parties must circulate nominating papers for that office. (See §§ 8872, 9372, 9722.) Section 9775 simply establishes that the two methods of becoming a candidate for a Peace and Freedom Party committee are independent and may be undertaken simultaneously. Thus, a member who fails to qualify as a candidate for nomination to public office may nevertheless become a candidate for the party office.[14]

As we do not find that section 9775 establishes an exception to section 6402, subdivision (b), we need not reach petitioner's equal protection argument.[15]

During oral argument respondent asserted for the first time that section 6402, subdivision (b) should prevent petitioner from running for the two offices at issue in order to prevent the commingling of partisan and nonpartisan offices. He claimed the purpose of California Constitution, article II, section 6[16] would be defeated if a party officer were to hold a nonpartisan office. He pointed out that party committees are prohibited from indorsing candidates for nonpartisan offices.

Though he cited no authority, we infer respondent relied on the principle enunciated in *Unger* v. *Superior Court* (1980) 102 Cal.App.3d 681 [162 Cal.Rptr. 611]. There the Court of Appeal held that "article II, section 6 prohibits a political party and, in particular, a county central

---

[14]While a person may become a nominee for the party office by two methods, he or she may not hold dual memberships on a party central committee both by direct election and by virtue of selection as a party candidate for another public office. (§ 9782.) This restriction effectively preserves the size of the committees and prevents a small group from gaining control of the local party organizations. It is clear that no conflicting duties are involved. Nor is there a disruption of the election process as a candidate elected to the central committee by virtue of becoming the party's nominee for partisan office (§ 9765) is simply disregarded in computing those candidates who are elected by receiving the highest number of votes for that position (§ 9783). Similarly, a vacancy occasioned by election of an insufficient number of members to a Democratic or Republican county committee may be filled by appointment by the elected committee members. (§§ 8829, 9829.)

[15]Whether allowing Peace and Freedom Party members to become candidates for central committee without filing nomination papers for that position poses equal protection problems is not an issue before us. Petitioner qualified for candidacy by circulating nominating papers for the party committee office. He did not seek to become his party's candidate for any public office.

[16]California Constitution, article II, section 6 provides: "Judicial, school, county and city offices shall be nonpartisan."

committee of a political party, from indorsing, supporting, or opposing a candidate for the office of governing member of the board of a community college district, a nonpartisan school office within the meaning of the constitutional provision, in any election." (102 Cal.App.3d at p. 686.)

This case is not within the *Unger* rule. The constitutional provision does not restrict the party affiliations of candidates for or holders of nonpartisan offices. No party affiliation will appear next to petitioner's name on the ballot for the nonpartisan office. (See § 6401.5.) Only those persons who are members of his party will receive a ballot which shows his candidacy for both positions. This cannot be construed as indorsement or support of the party.

Nor can section 6402 fairly be construed as implementing article II, section 6. Respondent's reasoning on this point would have the statute prohibit simultaneous candidacy for a party office and a nonpartisan office, but would have no corresponding effect on candidacies for party and partisan offices. The provisions of the statute, however, pertain largely to independent nominations for *partisan* offices. The absence of any other reason or authority causes us to reject respondent's argument.

In conclusion, we hold that section 6402, subdivision (b) does not prohibit petitioner from being a candidate for the Board of Directors of the Three Valleys Municipal Water District and for the Los Angeles County Democratic Central Committee at the same primary election. Our preliminary order placing petitioner's name on the ballot granted the relief sought and it is therefore unnecessary to issue the peremptory writ of mandate. The alternative writ is discharged and our order that votes cast for petitioner for membership on the Democratic Party county central committee be counted but no certificate of election issue is vacated. Respondent is ordered to certify petitioner's election if appropriate in accordance with the views we have expressed.

Bird, C. J., Newman, J., and Broussard, J., concurred.

**MOSK, J.**—I dissent.

The reliance of the majority on *Narver v. Jordan* (1916) 173 Cal. 424 [160 P. 245]—cited no less than five times in their opinion—demonstrates an appalling insensitivity to California political history. And, as should be obvious, *Narver* as an authority is a legal non sequitur; it involved a candidate who sought to cross-file for several

party nominations for *one* office, not as in the instant case *two* separate offices at one election.

*Narver* and cross-filing played an interesting role in our state's political development. Following an era when a politician required a black belt in corruption in order to survive in state and local government, Governor Hiram Johnson began in 1910 to cleanse the fetid electoral environment. As described by Gladwin Hill in Dancing Bear: An Inside Look at California Politics (1968) page 56, "Historically party organizations had been composed of activists selected originally at local and county conventions. Out of these would come a smaller, more elite group of delegates to a party's state convention, where nominees for major offices were chosen. [¶] The [Johnson] progressives scrapped this arrangement. Instead, party county committees were filled with persons elected in the biennial party primaries. Once elected, these county committees could hold meetings every day in the week if they wanted."

In 1916 when Hiram Johnson left Sacramento for Washington as a United States Senator, party organizational responsibility rapidly assumed a significant place in the political spectrum, culminating in the elimination of cross-filing in 1959. As one of the state's leading political observers put it, "The preoccupation of present-day California with political party affairs, along with incessant factional bickering within the two major parties, is a far cry from the spirit of nonpartisanship which prevailed for so many years." (Phillips, Big Wayward Girl: An Informal Political History of California (1968) p. 41.) The county central committees have once again become the official political party mechanism, recognized by law, and its members are formally defined by law as officers to be elected by the voters registered in the respective parties. As elected officers, a fortiori, they occupy an elective office.

Neither *Narver* nor any other case holds that one person may seek election to two offices at the same election, regardless of the nature of the offices. No case purports to distinguish between types of offices or compatibility of offices; the only issue is whether the two positions sought are elective offices.[1]

---

[1] The majority's reliance on *Stout* v. *Democratic County Central Com.* (1952) 40 Cal.2d 91 [251 P.2d 321], overlooks the following significant language in the opinion: "The real question presented is whether those *offices* exist at all . . . . The title of the persons named to those additional *offices* is incidental to that main question. We hold, therefore, that mandamus is the proper remedy." (Italics added; *id.,* p. 94.) *Azevedo* v. *Jordan* (1965) 237 Cal.App.2d 521 [47 Cal.Rptr. 125], is also inapposite except in its reference to the creation of an *office* by the Legislature and its ability to change or abolish an office not constitutionally established.

For more than 42 years, it has been the unchallenged law of California that one person may not be a candidate for more than one office at one election, and that the term "office" embraces every position for which an election is held. The majority, relying on mere *ipse dixit,* now jettison that salutary provision of the law and embark on an uncharted course that will have untoward consequences for the principle of wider participation of the citizenry in the political process.

In 1940, then Attorney General Earl Warren advised the Clerk of Contra Costa County that "In my opinion a member of the county central committee and, likewise, an Assemblyman, holds an 'office' as that term is used in subdivision (b) of section 2634 of the Elections Code [now § 6402, subd. (b)], which prohibits a person from filing nomination papers for more than one office at the same election." He pointed to section 3935 (now § 6465) of the Elections Code which specifically refers to "the office . . . of . . . member of a county central committee." (Ops.Cal. Atty.Gen. (1940) No. NS-2739.)

In 1950, then Attorney General Fred N. Howser informed the Registrar of Voters of Los Angeles that a county commmitteeman was an "officer," and one could not be both a senator and a county committeeman. He referred to this court which had denied a writ of mandate sought by a person who attempted to run for the two offices simultaneously.

Opinions confirming the one-person office rule were rendered by then Attorney General Edmund G. Brown in 1952 and 1954.

In 1962, as Attorney General I ruled consistently with the foregoing. In an opinion also signed by Assistant Attorney General Charles Barrett, we advised Secretary of State Frank Jordan that:

"Subsection (b) of this section has been construed by this office as preventing an individual from seeking two offices at the same election (Ops.Cal.Atty.Gen. No. NS-2739 [1940]). The same opinion held that the position of County Central Committeeman was an 'office' within the meaning of section 6402(b). This opinion has existed for twenty-two years, has formed the basis of subsequent opinions of this office (*e.g.,* 23 Ops.Cal.Atty.Gen. 22 [1954], 19 Ops.Cal.Atty.Gen. 118 [1952]), is consistent with the policy of preventing a conflict in the duties of public officers, and is hereby reaffirmed. It would therefore appear that an individual cannot file nomination papers for two offices at the same election and at the same time abide by section 6402(b)." (40 Ops.Cal.Atty.Gen. 99, 100 (1962) fn. omitted.)

Thus, for more than four decades the law has been clear and unambiguous, and so found to be by four Attorneys General. The state's county registrars, including this respondent, have abided by that law. As observed in *Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590, 595 [93 Cal.Rptr. 325]: "Opinions of the Attorney General are entitled to great weight as an administrative construction of a statute. [Citations.] 'It must be presumed that the aforesaid interpretation [of the Attorney General] has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted in the course of the many enactments on the subject in the meantime.'" (Accord, *Southwest Explor. Co.* v. *County of Orange* (1955) 44 Cal.2d 549, 554 [283 P.2d 257]; *Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420, 432 [15 Cal.Rptr. 717].)

The majority have cavalierly brushed aside numerous sections of the Elections Code which reveal legislative intent. For example, in section 6465 the Legislature has provided the form of notice to be published preceding an election. It declares that the notice published shall designate the *offices* and candidates therefor, and then lists various state, district, congressional, legislative, judicial, school, county, and county central committee *offices*. Similarly, under section 6587 the county clerk must publish notice of "offices for which candidates are to be nominated or elected," and included therein are members of the county central committee. Section 6551 provides that the county clerk must provide forms required for nomination and election to candidates for *office*; included are congressional, state, county, and political party county central committees. The latter position was added by the Legislature as recently as 1978, indicating clearly that its intent to consider county committeemen as officers still prevails. And section 10213, the caption of which is "Order of Offices," includes the county committee as one of the offices. All of these obvious indicia of legislative intent are blithely ignored by the majority.

There can be no rational policy reason to retreat from the uncomplicated statutory requirement that one person may run for only one office at one election. Indeed, policy arguments favoring the existing rule are particularly persuasive.

Conceivably it is possible for a person to serve on a local nonpartisan board and simultaneously conduct partisan campaigns as a party committeeman. But I suggest the inevitable injection of party politics into a nonpartisan office is likely to create administrative and substantive problems.

More significantly, it is extremely difficult—and in many instances impossible—for a state official, a congressman, or a state legislator to adequately serve his constituents if he is also an elected member of a party county central committee. To attend meetings of the committee and to perform his function as the political campaign arm of his party, he would be required periodically to abandon his post in Washington or Sacramento. Indeed, the 1962 Attorney General's opinion noted that the law "suggests a policy of encouraging members of the County Central Committee to attend meetings of the committee. A member of such a committee who spends the better part of his Central Committeeman term in Washington as a Congressional Representative is hardly able to conform to this policy." (40 Ops.Cal.Atty.Gen. at p. 100, fn. 1.)

It is for that reason, in my opinion, and also to encourage greater participation in the political process by nonofficeholders, that the Legislature has seen fit to prohibit one from seeking election to two offices, here a nonpartisan board and a partisan county committee office. If one person-one vote is a valid principle, one person-one office would appear to be equally desirable. The majority do a grave disservice to a long-accepted and salutary principle by their myopic interpretation of the term "office."

I would deny the writ.

Richardson, J., and Kaus, J., concurred.