TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  | : |  |
|---|---|---|
| OPINION | : |  |
|  | : | No. 24-702 |
| of | : |  |
|  | : | May 5, 2026 |
| ROB BONTA | : |  |
| Attorney General | : |  |
|  | : |  |
| RYAN B. McCARROLL | : |  |
| Deputy Attorney General | : |  |

The HONORABLE CHRISTOPHER BECK, COUNTY COUNSEL, COUNTY OF MONO, has requested an opinion on a question relating to the legal compatibility of public offices.

**QUESTION PRESENTED AND CONCLUSION**

May a person simultaneously serve as a Director of the Mono County Tri-Valley Groundwater Management District and as a Director of the White Mountain Fire Protection District?

No. A person may not simultaneously serve as a Director of the Mono County Tri-Valley Groundwater Management District and as a Director of the White Mountain Fire Protection District because the two offices are legally incompatible under Government Code section 1099.

**BACKGROUND**

The question presented here involves two public agencies that have overlapping boundaries in the Tri-Valley region of Mono County. The Mono County Tri-Valley Groundwater Management District (Groundwater District) generally includes the Valleys

1

of Benton, Hammil, and Chalfant.[1]  The White Mountain Fire Protection District (Fire District) includes some, but not all, of the same territory located in the Valleys of Benton and Hammil.[2]

Our requestor asks whether it would be lawful for a person to serve on the governing boards of both the Groundwater District and the Fire District at the same time.[3]  He asks specifically about the rule in Government Code section 1099(a) that a person "shall not simultaneously hold two public offices that are incompatible" with each other "unless simultaneous holding of the particular offices is compelled or expressly authorized by law."[4]  The rule "is not based on a personal conflict of interest on the part of the office holder, but upon the potential for conflicts that may arise from the nature of the duties of each office, regardless of the good faith, honor, or integrity of the incumbent."[5]

For the reasons discussed below, we conclude that section 1099(a) would prohibit a person from serving simultaneously on the governing boards of both the Groundwater District and the Fire District.  Specifically, the offices are legally incompatible under

---

[1] See Stats. 1989, ch. 844, § 202, 2 Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 590, § 202, p. 366, 72B West's Ann. Wat.—Appen. (1995 ed.) ch. 128, § 128-202, pp. 804-805; see also Stats. 2019, ch. 497, § 325 (amending parts of the Mono County Tri-Valley Groundwater Management District Act to refer to the Valley of "Hammil" rather than "Hamill").  Subsequent citations to this Act are to the official session laws exclusively.

[2] See Mono County Local Agency Formation Commission, Municipal Service Review and Sphere of Influence Recommendation for White Mountain Fire Protection Dist. (Feb. 2009) pp. 6, 8; White Mountain Fire Protection Dist., Strategic Plan for 2025-2029, p. 11, https://www.whitemountainfpd.org/5-year-strategic-plan (as of May 5, 2026).

[3] The question as phrased by the requestor is:  "May a person simultaneously serve on the Board of Commissioners of the White Mountain Fire Protection District Board of Directors (also known as the Benton Fire District) and the Board of Directors of the Tri Valley Groundwater Management District?"  This terminology is consistent with the fact that the governing board of the Fire District refers to itself as the Board of Fire Commissioners. (See White Mountain Fire Protection Dist., About Us, Board Members, https://www.whitemountainfpd.org/board-members (as of May 5, 2026).)  But the Health and Safety Code states that a fire protection district "shall be governed by a legislative body known as a board of directors."  (Health & Saf. Code, § 13840.)  It also states that, in certain circumstances, the governing board of a fire protection district "may delegate any or all of its powers to a fire commission composed of five or seven commissioners" who are subject to removal by the board of directors.  (Id., § 13844.)  We have rephrased the question to refer specifically to the Fire District Board of Directors to avoid any confusion over the identity, authority, or tenure of the Board.

[4] Gov. Code, § 1099, subd. (a).

[5] 93 Ops.Cal.Atty.Gen. 104, 106 (2010).

24-702

section 1099(a)(2) because, "[b]ased on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices."

## ANALYSIS

To determine whether Government Code section 1099 prohibits a person from sitting on the governing boards of two public agencies at the same time, we begin by summarizing the statutory authority under which the agencies operate. We then follow a three-step process to determine (1) whether the seats are "public offices," (2) whether they are "incompatible" with each other, and (3) whether sitting on both boards simultaneously "is compelled or expressly authorized by law."[6]

### About the Mono County Tri-Valley Groundwater Management District

The Groundwater District is one of several "agencies created by statute to manage groundwater" in particular parts of California.[7] As its name suggests, the Legislature created the District for the purpose of managing the groundwater basins located in the Valleys of Benton, Hammil, and Chalfant.[8] The District is responsible for "preserving the waters of the basins and, to the extent there becomes a surplus of groundwater, approving the terms and conditions of any sale of the surplus and equitably allocating the proceeds of that sale."[9]

The District is governed by a Board of Directors (Groundwater District Board) that consists of seven voting members.[10] It also includes "a county supervisor appointed by the board of supervisors as an ex officio, nonvoting member."[11] Each of the seven voting members "shall be elected at large from the district."[12] They "shall be residents of the district who are the owners of record of real property located within the district."[13] And at

---

[6] Gov. Code, § 1099, subd. (a).

[7] Wat. Code, § 10723, subd. (c)(1)(I) (listing the Groundwater District as an agency that "shall be deemed the exclusive local agenc[y] within [its] respective statutory boundaries with powers to comply with [the Sustainable Groundwater Management Act]").

[8] Stats. 1989, ch. 844, § 202; see Stats. 2019, ch. 497, § 325.

[9] Stats. 1989, ch. 844, § 102, subd. (d).

[10] Stats. 1989, ch. 844, § 401, subd. (a), as amended by Stats. 2018, ch. 111, § 1.

[11] *Ibid*.

[12] *Id*., § 401, subd. (a)(2), (3).

[13] *Ibid*.

24-702

least three of them must also be involved in extracting large volumes of groundwater for agricultural or other non-domestic use.[14]

The Legislature has specified that the Board may adopt ordinances to acquire, store, and sell water. Specifically, the Board may "[a]cquire water and water rights within or outside of the district."[15] The Board may similarly "[p]urchase and import water into the district."[16] It may "[s]tore water in and recapture water from surface reservoirs or groundwater basins within the district."[17] And it may "[e]xchange" or "sell water and water rights at rates determined by the board."[18]

The Board may also regulate the use of groundwater by third parties. For example, anyone seeking to export groundwater from within the district must obtain a permit from the Board and pay a fee based on the amount of water to be exported.[19] The Board may "reduce or suspend extractions by exporters" when there is "evidence of overdraft, or threat of overdraft," to the groundwater basins.[20] And, if conditions do not improve, the Board "may limit or suspend extraction by district users."[21] But the Board may grant an exemption to "any operator who extracts a minimum amount of groundwater as specified in an ordinance adopted by the board after notice and hearing."[22]

The Board also has the power to address disputes between groundwater users on a case-by-case basis. For example, the Board "may impose spacing requirements on new extraction facility construction to minimize well interference."[23] And it may issue remedial orders if it determines that "the legal rights of [a] complaining water user have been infringed through well interference by the extractions of any other operator within the district."[24] The Board may also "prosecute actions to enjoin unreasonable uses or methods

---

[14] *Id.*, § 401, subd. (a)(3).

[15] *Id.*, § 702, subd. (b); see *id.*, § 702, subd. (d).

[16] *Id.*, § 702, subd. (c).

[17] *Id.*, § 702, subds. (a), (f).

[18] *Id.*, § 702, subds. (d), (e).

[19] *Id.*, § 706, subd. (a); see *id.*, § 506.

[20] *Id.*, § 707.

[21] *Id.*, § 708.

[22] *Id.*, § 503.

[23] *Id.*, § 703.

[24] *Id.*, § 705.

of use of water within the district or outside of the district to the extent those uses or methods of use affect the groundwater supplies within the district."[25]

## About the White Mountain Fire Protection District

The Fire District is governed by a Board of Directors (Fire District Board) that consists of five members, each of whom is elected at large.[26] The Board has "broad statutory authority" under the Fire Protection District Law of 1987 to provide "fire protection services, rescue services, emergency medical services, hazardous material emergency response services, ambulance services, and other services relating to the protection of lives and property."[27] It may also order third parties "to correct or eliminate a fire hazard or life hazard."[28]

The District may "exercise all rights and powers, express or implied, necessary to carry out the purposes and intent of [the Fire Protection District Law]."[29] So, for example, it may "acquire any property, including water facilities for providing fire protection, within the district by any means."[30] It may likewise "acquire by eminent domain any property necessary to carry out any of its powers or functions."[31] And it may "enter into and perform all necessary contracts."[32] So too may it "enter into mutual aid agreements with any federal or state agency, any city, county, city and county, special district, or federally recognized Indian tribe."[33]

## The Directors of These Agencies Hold Public Offices

As mentioned, Government Code section 1099(a) prohibits a person from holding two "public offices" that are incompatible with each other, except as compelled or expressly authorized by law. By its terms, the statute applies to any "public officer, including, but not limited to, an appointed or elected member of a governmental board,

---

[25] *Id*., § 705, subd. (g).

[26] White Mountain Fire Protection District, About Us, Board Members, https://www.whitemountainfpd.org/board-members (as of May 5, 2026).

[27] Health & Saf. Code, § 13801; see *id*., § 13862.

[28] *Id*., § 13870, subd. (a).

[29] *Id*., § 13861.

[30] *Id*., § 13861, subd. (b).

[31] *Id*., § 13861, subd. (c).

[32] *Id*., § 13861, subd. (f).

[33] *Id*., § 13863, subd. (a).

commission, committee, or other body."[34] But it "does not apply to a position of employment, including a civil service position."[35] Nor does it apply to "a governmental body that has only advisory powers."[36]

To determine whether a seat on a particular board is subject to section 1099, we consider "judicial and administrative precedent concerning incompatible public offices developed under the common law."[37] For example, we consider whether "the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."[38] These sovereign powers "include statutorily imposed duties related to the exercise of state police powers; power to dispose of public property; power to incur financial obligations on the part of the government; and power to act in business or political dealings between individuals and the public."[39]

Here, there is little if any question that the members of the Fire District Board hold public offices within the meaning of section 1099. As mentioned, they are elected by the voters to exercise sovereign powers for the benefit of public health and safety throughout the district.[40] The same is true regarding the voting members of the Groundwater District Board. These members are elected by the voters and entrusted with sovereign powers for the purpose of "carrying out . . . functions of statewide importance."[41] Indeed, they perform a public function for the public benefit by "preserving the waters of the basins," which might otherwise "become overdrafted, thereby depleting supplies for domestic uses,

---

[34] Gov. Code, § 1099, subd. (a).

[35] *Id.*, § 1099, subd. (c).

[36] *Id.*, § 1099, subd. (d).

[37] Stats. 2005, ch. 254, § 2; see Gov. Code, § 1099, subd. (f); 93 Ops.Cal.Atty.Gen. 144, 145-146 (2010).

[38] 106 Ops.Cal.Atty.Gen. 79, 82 (2023), quoting 102 Ops.Cal.Atty.Gen. 39, 42-43 (2019); see *Moore v. Panish* (1982) 32 Cal.3d 535, 545.

[39] 106 Ops.Cal.Atty.Gen., *supra*, at p. 82.

[40] See Health & Saf. Code, § 13861; see also 106 Ops.Cal.Atty.Gen. 112, 114 (2023) (seat on the governing board of Eastside Rural Fire Protection District is a public office); 102 Ops.Cal.Atty.Gen. 39, 44 (2019) (same for Stanislaus Consolidated Fire Protection District); 97 Ops.Cal.Atty.Gen. 50, 53 (2014) (same for Hornbrook Fire Protection District); 76 Ops.Cal.Atty.Gen. 38, 40 (1993) (same for Hesperia Fire Protection District).

[41] Stats. 1989, ch. 844, § 102, subd. (e).

24-702

curtailing reasonable growth, endangering the economic viability of agriculture, and otherwise adversely affecting the environment and economy of the area."[42]

As for the nonvoting seat on the Groundwater District Board, the question presented does not require us to determine whether the seat is a public office within the meaning of section 1099. This is because, even assuming without deciding that the nonvoting seat does not qualify as a public office by itself, section 1099 would still prohibit its holder from simultaneously serving on the Fire District Board. As mentioned, the Legislature has reserved the nonvoting seat on the Groundwater District Board for "a county supervisor appointed by the board of supervisors," who shall serve as an "ex officio" member of the Groundwater District Board.[43] And, as discussed below, the respective powers and duties of the Mono County Board of Supervisors and the Fire District Board are sufficient by themselves to preclude service on both boards simultaneously.[44] In other words, the prohibition on simultaneous service applies to every member of the Board of Supervisors, including the individual supervisor who has been appointed to serve as a nonvoting, ex officio member of the Groundwater District Board.

**These Public Offices Are Incompatible with Each Other**

We next consider whether simultaneous service on both the Groundwater District Board and the Fire District Board is "incompatible" within the meaning of Government Code section 1099. As relevant here, public offices are incompatible under section 1099(a)(2) if, "[b]ased on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices."[45] Although section 1099(a)(2) does not define a "significant" clash of duties or loyalties, we have "construed the term to mean a clash that is not trivial and is more certain than mere chance."[46] For

---

[42] *Id*., § 102, subds. (b), (d); cf. 98 Ops.Cal.Atty.Gen. 94, 96 (2015) (seat on the governing board of the Water Replenishment District of Southern California is a public office); 97 Ops.Cal.Atty.Gen., *supra*, at pp. 52-53 (same for Hornbrook Community Services District, which supplies water for domestic use).

[43] Stats. 1989, ch. 844, § 401, subd. (a)(1), as amended by Stats. 2018, ch. 111, § 1.

[44] See 66 Ops.Cal.Atty.Gen. 176, 178 (1983) ("There is no doubt but that a member of a county board of supervisors holds a public office"); see also 86 Ops.Cal.Atty.Gen. 205, 206 (2003) ("We have previously concluded that the office of county supervisor is incompatible with a variety of other local public offices").

[45] Gov. Code, § 1099, subd. (a)(2); see also *id*., § 1099 subd. (a)(1) (offices are incompatible if either of them "may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body"); *id*., § 1099, subd. (a)(3) (offices are incompatible if "[p]ublic policy considerations make it improper for one person to hold both offices").

[46] 101 Ops.Cal.Atty.Gen. 81, 86 (2018), citing 93 Ops.Cal.Atty.Gen. 104, 108 (2010).

24-702

example, offices are compatible if they have "only infrequent dealings not involving the core functions of the two offices."[47] But they are incompatible if the potential clash would involve their "principal and important duties."[48]

We have also explained that, because section 1099(a)(2) refers to the mere "possibility" of a significant clash of duties or loyalties, such a clash "need not actually be realized to render two offices incompatible. Rather, incompatibility is determined by the functions of the two offices in the abstract and there need not be a showing that an officeholder's loyalties actually have been tested—or that it is inevitable they will be tested—for the offices to be incompatible."[49] "In other words, it is not a question of the use of the powers that creates incompatibility, but the possibility of such use through the possession of inconsistent functions."[50]

We have previously applied these standards to relationships between public agencies that are similar to the current relationship between the Groundwater District and the Fire District. In 97 Ops.Cal.Atty.Gen. 50 (2014), for example, we identified three significant clashes that might arise between the Hornbrook Fire Protection District and the Hornbrook Community Services District. These potential clashes were largely based on the fact that the Community Services District had been formed to provide water in areas of Hornbrook that were served by the Fire District.[51]

We explained, first, that if the Fire District decided to purchase water from the Community Services District, then the latter "would set water rates for the Fire District as well as control the amount of water that the Fire District could use during any shortage."[52] Second, the districts might be drawn into competition with each other if they decided "to acquire the same water facilities."[53] Third, the Fire District might "issue written orders to eliminate fire hazards on the [Community Services] District's property," which could affect the latter's "property value or insurance" and lead to "a misdemeanor citation from the Fire District."[54]

---

[47] 84 Ops.Cal.Atty.Gen. 34, 39 (2001).

[48] *Ibid*., quoting 33 Ops.Cal.Atty.Gen. 49, 53 (1959).

[49] *People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 819; see 104 Ops.Cal.Atty.Gen. 15, 19-20 (2021).

[50] 63 Ops.Cal.Atty.Gen. 623, 626 (1980), quoting 2 Ops.Cal.Atty.Gen. 177, 178 (1943).

[51] 97 Ops.Cal.Atty.Gen., *supra*, at p. 53.

[52] *Id*. at p. 54.

[53] *Ibid*.

[54] *Id*. at pp. 54-55.

24-702

In our view, the same clashes of duties or loyalties might arise between the Groundwater District and the Fire District at issue here. Although we have received no indication that there is currently a buyer/seller relationship between the Fire District and the Groundwater District, the Legislature has given the Groundwater District the power to "sell water and water rights at rates determined by the board."[55] And the Groundwater Board's decision whether to exercise this power could be influenced by the needs of the Fire District.[56] Even if the Groundwater Board never exercises this power, it could still be drawn into competition with the Fire District if they both attempt to acquire the same water or water facilities.[57]

There are also regulatory and enforcement disputes that might arise between these districts. For example, the Fire District has the authority to order the Groundwater District "to correct or eliminate a fire hazard or life hazard."[58] Likewise, the Groundwater District "may impose spacing requirements" on new groundwater extraction facilities used by the Fire District.[59] So too might the Groundwater District disagree with particular ways in which the Fire District uses water within the Tri-Valley region or while providing mutual assistance outside of the region, especially if the groundwater basins are overdrawn.[60] And those disagreements might cause the Groundwater District to bring an action against the Fire District "to enjoin unreasonable uses or methods of use of water within the district or outside of the district to the extent those uses or methods of use affect the groundwater supplies within the district."[61]

---

[55] Stats. 1989, ch. 844, § 702, subd. (d); see also *Public Water Agencies Group v. Consolidated Fire Protection Dist.* (1983) 145 Cal.App.3d 695, 701 (state law does not require public water agencies to "supply emergency water services for fire protection purposes, free of charge").

[56] See 75 Ops.Cal.Atty.Gen. 112, 116 (1992) (interests of school district could affect decision whether to expand types of services provided by community services district).

[57] See Stats. 1989, ch. 844, § 702, subd. (a) (Groundwater District may "[s]tore water in and recapture water from surface reservoirs or groundwater basins within the district"); Health & Saf. Code, § 13861, subd. (b) (Fire District may "acquire any property, including water facilities for providing fire protection, within the district by any means"); cf. *id.*, former § 13852, subd. (g), added by Stats. 1961, ch. 565, p. 1692 (power of a fire protection district to make "necessary contracts" might include "contracts for the supply and distribution of water where necessary for the purposes of fire protection").

[58] Health & Saf. Code, § 13870, subd. (a).

[59] Stats. 1989, ch. 844, § 703; see 101 Ops.Cal.Atty.Gen. 81, 87 (2018) ("The potential for conflict over land-use decisions is an indicator of incompatibility").

[60] See Health & Saf. Code, § 13863, subd. (a); Stats. 1989, ch. 844, §§ 702, subd. (a), 708.

[61] Stats. 1989, ch. 844, § 705, subd. (g).

As in the Hornbrook opinion, "[o]ther instances of conflict may be envisioned based upon the statutory power" of the Groundwater District and the Fire District.[62] But "only 'one potential significant clash of duties or loyalties is necessary to make offices incompatible.'"[63] Given the significant potential clashes that we have identified, we conclude that simultaneous service as a voting member of both the Groundwater District Board and the Fire District Board is incompatible under section 1099(a).

We likewise conclude that a member of the Fire District Board cannot simultaneously occupy the *nonvoting* seat on the Groundwater District Board. As mentioned, this seat is reserved for a member of the Mono County Board of Supervisors.[64] And section 1099 prohibits serving simultaneously on the Board of Supervisors and the Fire District Board due to the possibility of divided loyalties. We have previously explained that, for example, a county board of supervisors has discretion to adjust the amount of sales tax revenue that an independent fire protection district, like the one at issue here, receives under the Local Public Safety Protection and Improvement Act of 1993 (Proposition 172).[65] So too does a county board of supervisors have discretion to lend county funds to a fire protection district "in order to enable the district to perform its functions and meet its obligations"[66] or "for the acquisition of real or personal property and the construction of structures needed for district purposes."[67]

As these examples illustrate, there is a possibility of a significant clash of financial duties and loyalties between members of the Fire District Board and members of the Mono County Board of Supervisors.[68] Section 1099 therefore prohibits serving simultaneously on the Board of Supervisors and the Fire District Board. As a result, the member of the Board of Supervisors who occupies the nonvoting seat on the Groundwater District Board may not serve simultaneously on the Fire District Board.

---

[62] 97 Ops.Cal.Atty.Gen., *supra*, at p. 55, fn. 36.

[63] 101 Ops.Cal.Atty.Gen., *supra*, at p. 85, quoting 85 Ops.Cal.Atty.Gen. 60, 61 (2002).

[64] Stats. 1989, ch. 844, § 401, subd. (a)(1), as amended by Stats. 2018, ch. 111, § 1.

[65] 87 Ops.Cal.Atty.Gen. 1, 4 (2004) (independent fire protection districts are eligible to receive funding under Proposition 172 because they qualify as local public safety service agencies); 86 Ops.Cal.Atty.Gen. 38, 42 (2003) ("a county board of supervisors has the discretion, in each fiscal year, to change the allocation of Proposition 172 funds among otherwise eligible public safety service agencies").

[66] Gov. Code, § 23010, subd. (a).

[67] *Id.*, § 23010.1.

[68] See *id.*, § 1099, subd. (a)(2).

**There Is No Applicable Exception to the General Rule Against Holding Incompatible Offices**

Finally, we must consider whether simultaneously serving on the governing boards of the Groundwater District and the Fire District "is compelled or expressly authorized by law" within the meaning of Government Code section 1099(a). This language refers to a situation in which simultaneous service is compelled or expressly authorized by *state* law rather than by a local ordinance or resolution.[69] Indeed, the legislative history of section 1099 indicates that "the Legislature intended to occupy the field on a matter of statewide concern and preclude 'local loopholes.'"[70]

Here, we are not aware of any state law that authorizes simultaneous service on the governing boards of the Groundwater District and the Fire District. For example, the Fire Protection District Law does not compel or expressly authorize a person to serve on the governing boards of a fire protection district and another public agency.[71] Likewise, when the Legislature reserved a seat on the Groundwater District Board of Directors for a member of the Mono County Board of Supervisors, it did not compel or expressly authorize the occupant of this seat to serve on the governing board of a third agency.[72] Nor did it authorize any of the voting members of the Groundwater District Board of Directors to serve on the governing board of another agency. These omissions are notable because, when the Legislature created the Groundwater District in 1989, the Fire District had already been operating in the Tri-Valley region for several years. And the Legislature has not amended the Groundwater District Act in the ensuing decades to compel or expressly authorize simultaneous service on the governing boards of these particular agencies.

**CONCLUSION**

For these reasons, we conclude that a person may not simultaneously serve as a Director of both the Mono County Tri-Valley Groundwater Management District and the White Mountain Fire Protection District.

\*\*\*\*\*

---

[69] *People ex rel. Lacey v. Robles*, *supra*, 44 Cal.App.5th at p. 822; see 106 Ops.Cal.Atty.Gen. 26, 29 (2023).

[70] *People ex rel. Lacey v. Robles*, *supra*, 44 Cal.App.5th at p. 823, fn. 10.

[71] See Health & Saf. Code, § 13800 et seq.

[72] See Stats. 1989, ch. 844, § 401, subd. (a), as amended by Stats. 2018, ch. 111, § 1.

11

24-702