Filed 4/9/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SHIRLEY N. WEBER, as Secretary of State, etc., | C100304 |
| Petitioner, | (Super. Ct. No. 23WM000137) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| VINCE FONG, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Petition denied. Shelleyanne W.L. Chang, Judge.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman, Malcolm A. Brudigam and Seth E. Goldstein, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Bell, McAndrews & Hiltachk, Brian T. Hildreth, Thomas Hiltachk and Katherine C. Jenkins for Real Party in Interest.

1

Direct primary elections in California are governed by chapter 1, of part 1, of division 8 of the Elections Code.[1] Section 8003 (which is in chapter 1) provides: "This chapter does not prohibit the independent nomination of candidates . . . , subject to the following limitations: [¶] . . . [¶] (b) No person may file nomination papers for a party nomination and an independent nomination for the same office, or for more than one office at the same election." The independent nomination process, in turn, provides a way for candidates to "be nominated subsequent to, or by other means than, a primary election." (§ 8300; see § 8400.)

Real party in interest Vince Fong filed nomination papers for two different offices for the March 5, 2024, primary election: (1) California Assembly District 32 (for which he is the incumbent), and (2) Congressional District 20. Citing section 8003, subdivision (b), the Secretary of State (the Secretary) refused to accept his nomination papers for the 20th Congressional District. Fong then sought a writ of mandate ordering the Secretary to accept his papers and include his name on the certified list of candidates for the 20th Congressional District, which would ensure his name was on the primary election ballot. Respondent superior court granted Fong's request, holding section 8003, subdivision (b) only applied to the independent nomination of candidates, and because Fong was not seeking to utilize the independent nomination process, the statute did not apply him.

Because the superior court's decision was issued at almost 5:00 p.m. on the day the Secretary had to transmit the certified list of candidates to county elections officials, she concluded there was insufficient time to seek an immediate stay and complied with the order to include Fong's name on the certified candidate list for both offices. The Secretary filed a notice of appeal on January 12, 2024, and 10 days later filed the current

---

[1] Further undesignated statutory references are to the Elections Code.

petition for writ of mandate seeking reversal of the superior court's decision, requesting that we resolve this matter no later than April 12, 2024, the date by which she must certify the results of the primary election. We issued an order to show cause, ordered expedited briefing, and set the matter for oral argument.

For the reasons explained below, we agree with the superior court and conclude that section 8003, subdivision (b) only applies to the independent nomination process and therefore has no application to the facts before us. We thus deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

California's 2024 presidential primary election was scheduled for March 5, 2024, and that date triggered numerous election-related deadlines. As relevant here, candidates had to file nomination papers, including a declaration of candidacy, by December 8, 2023, in order to have their names printed on the ballot. (§ 8020.) However, if an incumbent officeholder did not timely file nomination papers, the deadline for any other person to file nomination papers for that office would be extended to December 13, 2023. (§ 8022.) Finally, the Secretary had to "transmit to each county elections official a certified list of candidates who are eligible to be voted for in his or her county at the direct primary" by December 28, 2023. (§ 8120.) Once the certified list of candidates is transmitted, the process of printing and mailing ballots begins, so any delay in the transmission of that list could negatively impact that process.[2]

On December 6, 2023, Kevin McCarthy announced he was resigning from Congress effective December 31, 2023. McCarthy served in the United States House of Representatives and represented California's 20th Congressional District. McCarthy's

---

[2] For example, ballots for military and overseas voters are mailed "not sooner than 60 days but not later than 45 days before the election." (§ 3114.) Delaying transmission of the certified list could make it extremely difficult to meet this deadline.

3

resignation meant that any person who wanted to run for his office had until December 13, 2023, to file nomination papers.

Fong currently serves in the California State Assembly and represents the 32d Assembly District. On December 8, 2023, which was the last day to do so, he filed a declaration of candidacy for that office. California law provides, "No candidate whose declaration of candidacy has been filed for any primary election may withdraw as a candidate at that primary election." (§ 8800.) On December 12, 2023, Fong filed nomination papers for the 20th Congressional District. In other words, several days after filing nomination papers to run for his State Assembly seat, Fong decided to run for McCarthy's congressional seat.

On December 15, 2023, the Secretary notified Fong that she would not accept his nomination papers for the 20th Congressional District. She explained: "Section 8800 prevents the withdrawal of a candidacy for a primary election. Section 8003(b) prohibits a person from filing nomination papers for more than one office at the same election. In conjunction, those statutes permit [Fong] to appear only as a candidate for the 32nd Assembly district."

On Friday, December 22, 2023, Fong filed a petition in the superior court seeking a writ of mandate ordering the Secretary to include his name on the certified list of candidates for the 20th Congressional District at the March 5, 2024, primary election. After an expedited briefing schedule, a hearing on the petition was held at 1:30 p.m. on December 28, the day the Secretary had to transmit a certified list of candidates to county elections officials. At approximately 4:50 p.m. that same day, the superior court issued an order granting the petition. The superior court held that section 8003, subdivision (b) only applied "to the process for the independent nomination of candidates," and was thus "inapplicable to Fong and cannot be used as a reason to preclude him from the Primary ballot" for the 20th Congressional District. In reaching its conclusion, the superior court noted its "concern[] about the outcome . . . , as it may result in voter confusion and the

4

disenfranchisement of voters if Fong is ultimately elected for both offices but does not retain one." It went on to observe that "it somewhat defies common sense to find the law permits a candidate to run for two offices during the same election. However, . . . the Court is compelled to interpret the law as it is written by the Legislature and finds Elections Code section 8003 is inapplicable."

Because the trial court's decision was issued late on the day on which the Secretary had to transmit the certified list of candidates to county elections officials, and because delaying the transmission of that list could negatively impact the timely printing and mailing of ballots in the affected counties, the Secretary complied with the court's order without seeking immediate appellate relief. Fong's name was thus included on the certified list of candidates for both the 20th Congressional District and the 32d Assembly District.

On January 4, 2024, the superior court issued a judgment granting the petition and a writ of mandate ordering the Secretary to include Fong's name on the certified list of candidates for the 20th Congressional District.

On January 12, 2024, the Secretary filed a notice of appeal (case No. C100273).

On January 22, 2024, the Secretary filed the current petition for writ of mandate, seeking relief on an "urgent[]" and "immediate" basis, and asking us to resolve this matter no later than April 12, 2024, which is the date by which she has to certify the results of the primary election. She seeks a writ of mandate directing the superior court to vacate its ruling. We issued an order to show cause, and scheduled briefing and oral argument on an expedited basis.

In the meantime, the primary election was held on March 5, 2024. As of the time of this writing, Fong has received a plurality of the votes (approximately 42 percent) for the 20th Congressional District (the second and third place finishers received approximately 24 and 21 percent of the votes, respectively). Under California's "top-two" primary system, that means Fong will advance to the general election unless our

5

ruling on the present petition somehow alters that result.  (§ 8141.5.)  He also received 100 percent of the votes for the 32d Assembly District (he was the only candidate who submitted nomination papers and thus the only candidate on the ballot for that office).

## DISCUSSION

We briefly note that Fong argues we should dismiss the petition without reaching the merits due to several "threshold legal defects."  Some of his arguments have arguable merit, particularly his contention that, even if we were to find the trial court erred in ordering the Secretary to place Fong's name on the certified list of candidates for the primary election, effective relief is no longer available because ballots were distributed and the election has been held, thus ordering the trial court to vacate its order would be an idle act.  We nonetheless agree with the Secretary that " 'an appellate court may resolve controversies that are technically moot if the issues are of substantial and continuing public interest.  [Citation.]  Although courts generally avoid issuing advisory opinions on abstract propositions of law, they "should not avoid the resolution of important and well litigated controversies arising from situations which are 'capable of repetition, yet evading review.' " ' " (*Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 849.)  Questions involving ballot access and whether votes for a particular candidate will be counted, go to the heart of our democracy and are of substantial and continuing public interest.  (See *Eblovi v. Blair* (2016) 6 Cal.App.5th 310, 313 [" 'disputes concerning election procedures are properly reviewable by an appellate court even though the particular election in question has already taken place . . . since the issues raised are of general public interest, and are likely to occur in future elections in a manner evasive of timely appellate review' "], citing *Gebert v. Patterson* (1986) 186 Cal.App.3d 868, 872.)  We thus proceed to decide the petition on the merits, which requires us to interpret section 8003.  In doing so, "We independently review the trial court's interpretation of [the] statute [citation], applying the familiar rules of statutory interpretation." (*Obbard v. State Bar of California* (2020) 48 Cal.App.5th 345, 349.)

6

*1.  Plain Language*

We begin with the plain language of section 8003, "because the words of a statute are generally the most reliable indicator of legislative intent."  (*In re C.H.* (2011) 53 Cal.4th 94, 100.)  Section 8003, which is found in part 1, chapter 1, of division 8 of the Elections Code provides, in full:

"This chapter does not prohibit the independent nomination of candidates under Part 2 (commencing with Section 8300), subject to the following limitations:

"(a)  A candidate whose name has been on the ballot as a candidate of a party at the direct primary and who has been defeated for that party nomination is ineligible for nomination as an independent candidate.  He is also ineligible as a candidate named by a party central committee to fill a vacancy on the ballot for a general election.

"(b)  No person may file nomination papers for a party nomination and an independent nomination for the same office, or for more than one office at the same election."

Part 2, which is also in chapter 1 of division 8 of the Elections Code (commencing with § 8300), defines the process by which a candidate "may be nominated subsequent to, or by other means than, a primary election."  (§ 8300.)  For purposes of this analysis, we need not delve into how the independent nomination process works, other than to note that some version of it has existed since at least the 1890s (see Stats. 1891, ch. 130, § 4, p. 166), and it was intended "to permit absolutely independent nominations of persons as candidates who have no political affiliations with any party, and who do not intend to form a party, but who become candidates for reasons personal to themselves or to those who sign the certificates."[3]  (*Partridge v. Devoto* (1905) 148 Cal. 167, 171.)  It is

---

[3]     Fong argues that when California voters adopted Proposition 14 in 2010 and replaced a partisan primary election process with a top-two open and nonpartisan primary election process, they also effectively "abandoned" the independent nomination process,

7

undisputed that Fong is *not* trying to get on the general election ballot via the independent nomination process; he is trying to get on the general election ballot by means of the primary election.

The question in this case is how to interpret the text of subdivision (b) of section 8003, which provides, "*No person may file nomination papers* for a party nomination and an independent nomination for the same office, or *for more than one office at the same election*." (Italics added.) The Secretary contends that subdivision (b) should be interpreted by focusing solely on the italicized language, which, she argues, plainly prohibits any person from filing nomination papers for more than one office at the same election. Fong, in contrast, argues that subdivision (b) must be interpreted in the context of section 8003 as a whole, and, when read in conjunction with the first clause—i.e., "This chapter does not prohibit the independent nomination of candidates . . . subject to the following limitations"—its plain language only places limits on the independent nomination process and does not broadly prohibit any person from filing nomination papers for more than one office at the same election. Although the Secretary's interpretation is plausible, we conclude that Fong has the better argument.

The weakness in the Secretary's interpretation is that it focuses exclusively on subdivision (b), and ignores the remainder of section 8003's text. In effect, she interprets subdivision (b) as if it is a standalone provision. This violates at least two rules of statutory construction. "First, statutory language is to be understood in context, with the whole of a statute considered when attempting to construe each part." (*Mendoza v.*

---

"and since then, section 8003 has had no application in any election." (See, e.g., *Rubin v. Padilla* (2015) 233 Cal.App.4th 1128, 1137-1138 [describing changes made by Prop. 14].) The Secretary agrees "there is no longer an independent nomination process for the general election," but argues that section 8003, subdivision (b) still applies, citing the rule that "California disfavors the implied repeal of statutes." (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 119.) We need not resolve this issue in order to decide this case.

*Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.) "Restated in the negative, an enactment's language is not construed in isolation." (*Superior Court v. Public Employment Relations Bd.* (2018) 30 Cal.App.5th 158, 188.) "Second, the Legislature does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so." (*Mendoza*, at p. 1087.)

The Secretary's interpretation ignores what we will refer to as the first clause of section 8003, which provides, "This chapter does not prohibit the independent nomination of candidates . . . subject to the following limitations." Section 8003 then goes on to identify in subdivisions (a) and (b) the "limitations" on the independent nomination process that were referenced in the first clause. The first clause thus does two things: first, it states that the chapter governing direct primary elections does not prohibit the independent nomination of candidates by means other than a primary election; and second, it defines certain limitations on the independent nomination of candidates. Contrary to the Secretary's argument, the first clause cannot be interpreted as introducing "general prohibitions applicable to *all* candidates" (italics added), regardless of whether they are using the independent nomination process. If section 8003 established general prohibitions applicable to all candidates, then the first clause would be meaningless, and "[i]nterpretations that render statutory language meaningless are to be avoided." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 386.)

Subdivision (b)—which is one of the "limitations" on the independent nomination of candidates—provides, "No person may file nomination papers for a party nomination and an independent nomination for the same office, *or* for more than one office at the same election." (Italics added.) The Secretary argues the word "or" is disjunctive and subdivision (b) thus contains "two distinct prohibitions." We agree. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622 [the word "or" "has a disjunctive meaning" and is used to mark alternatives].) But there are then two ways in which to interpret what the two prohibitions are.

9

The Secretary argues that subdivision (b) prohibits: (1) filing nomination papers for a party nomination and an independent nomination for the same office, and (2) filing nomination papers for more than one office at the same election. The Secretary thus effectively interprets subdivision (b) like this (we have added bracketed numbers to make our point clearer): "No person may file nomination papers [1] for a party nomination and an independent nomination for the same office, or [2] for more than one office at the same election." As interpreted by the Secretary, only the first prohibition is properly understood as a limitation on the independent nomination process, while the second prohibition is "much broader" and would apply whenever *any* person seeks to file nomination papers for more than one office at the same election. Under this interpretation, however, the second prohibition is not a limitation on the independent nomination process, and thus effectively ignores the first clause of section 8003.

There is another way to interpret subdivision (b) that does not ignore the statutory subject articulated in the first clause (we have again added bracketed numbers to make our point clearer): "No person may file nomination papers for a party nomination and an independent nomination [1] for the same office, or [2] for more than one office at the same election." So interpreted, subdivision (b) still contains two separate prohibitions, but, unlike the Secretary's interpretation, both prohibitions are limitations on the use of the independent nomination process. We believe this interpretation, while potentially leading to anomalous results (as noted by the superior court in its order), is the only way to give effect to all parts of section 8003. And because Fong has not submitted nomination papers for a party nomination and an independent nomination for more than one office at the same election, section 8003, subdivision (b) does not apply to his candidacy.

## 2. Case Law

We are not the first court to construe section 8003 in this way. Although the facts are different and neither case involved the precise issue that we must decide here, we

believe this is how our Supreme Court interpreted the predecessors to section 8003 in *Narver v. Jordan* (1916) 173 Cal. 424 (*Narver*) and *Moore v. Panish* (1982) 32 Cal.3d 535 (*Moore*), and we are, of course, bound by our Supreme Court's interpretation. (*People v. Poe* (1999) 74 Cal.App.4th 826, 833.)

*Narver* involved an interpretation of a provision in the Direct Primary Law of 1913 that stated, in full: "Nothing herein shall be construed as prohibiting the independent nomination of candidates as provided by section 1188 of the Political Code [this section is the predecessor of section 8300 et seq. and it provided how and when a candidate may be nominated "subsequent to" or "in lieu of" a primary election], as said section was enacted by at the fortieth session of the legislature of the State of California; except that a candidate who has filed nomination papers as one of the candidates for nomination to any office on the ballots of any political party at a primary election held under the provisions of this act, and who is defeated for such party nomination at such primary election, shall be ineligible for nomination to the same office at the ensuing general election, either as an independent candidate or as the candidate of any other party, and *no person shall be permitted to file nomination papers for a party nomination and an independent nomination for the same office, or for more than one office at the same election.*"[4]  (Stats. 1913, ch. 690, § 5, pp. 1390-1391; see Stats. 1913, ch. 636, § 1, p. 1168.)  We note how similar this provision is to section 8003 as a whole, and also note that the italicized language is almost identical to section 8003, subdivision (b).

In *Narver*, Henry Stanley Benedict filed nomination papers as a Republican candidate for the 10th Congressional District.  At the primary election, he was defeated for the Republican nomination, but he won the Progressive nomination as a write-in candidate.  The petitioner sought a writ of mandate compelling the Secretary of State to

---

[4]     We note the *Narver* court did not cite the italicized language, because it was not at issue in that case.

omit Benedict's name from the certified list of candidates to be placed on the general election ballot, arguing he was ineligible for the Progressive nomination because he was defeated for the Republican nomination. (*Narver, supra*, 173 Cal. at pp. 424-425.) The court held Benedict was not ineligible to be the Progressive nominee and it dismissed the petition. (*Id.* at p. 427.)

The court first noted it was undisputed that Benedict "filed nomination papers as a candidate for the Republican party nomination, and he was defeated for such party nomination at the primary election." (*Narver, supra*, 173 Cal. at p. 426.) The petitioner claimed this fact "brings him squarely within the language of the subdivision" that states such a candidate " 'shall be ineligible for nomination to the same office at the ensuing general election . . . as . . . the candidate of any other party.' " (*Ibid.*) The court began its analysis by noting, "It must be confessed that there is much force in [petitioner's] contention *if the words of the provision commencing with the word 'except' be construed as an independent provision, and not merely as an exception to and a limitation of the preceding language guaranteeing the right . . . of independent nomination of candidates* as provided in section 1188 of the Political Code." (*Ibid.*, italics added.) Ultimately, however, the court concluded the words commencing with and thus following the word "except" should *not* be construed as an independent provision and should instead be construed as merely an exception to and limitation on the opening language guaranteeing the right of independent nomination of candidates. It explained, "It seems clear to us that the only reasonable construction that can be given to this provision is that it has reference *only to* attempted nominations under section 1188 of the Political Code 'subsequent to' or 'in lieu of any primary election,' " and that "the *provision as a whole* is simply a declaration that nothing in the act shall be construed as prohibiting the independent nomination of candidates subsequent to or in lieu of any primary election, as providing in section 1188, except that no candidate defeated for a party nomination for such office at the primary may be so nominated." (*Id.* at pp. 426-427, italics added.)

Although the present case involves a different exception to and limitation on the independent nomination process, the outcome is the same. Following *Narver*, as we must, we hold that subdivision (b) of section 8003 should not "be construed as an independent provision" that applies broadly to all candidates, and that it should instead be construed "merely as an exception to and a limitation" on the independent nomination of candidates subsequent to, or by other means than, a primary election. (*Narver, supra*, 173 Cal. at p. 426.) Put another way, section 8003 "as a whole is simply a declaration that nothing [in the chapter governing direct primaries] shall be construed as prohibiting the independent nomination of candidates subsequent to or in lieu of any primary election, as provided in [section 8300 et seq.], except that" no person may file nomination papers for a party nomination and an independent nomination for more than one office at the same election. (*Narver*, at p. 427.) Because Fong did not file nomination papers for an independent nomination, section 8003 does not apply to him.

*Moore* is similar. It was decided in 1982, and by that time, the statutory text had been moved to the Elections Code and was substantially identical to the text of section 8003 (we will thus refer to it as section 8003). (*Moore, supra*, 32 Cal.3d at pp. 540-541.) The issue in *Moore* was whether section 8003 precluded the petitioner from submitting nomination papers for two offices or positions to be voted on at the same primary election: (1) a member of the Los Angeles County Democratic Central Committee (the party central committee), and (2) a member of the board of a local water district. (*Moore*, at p. 539.) The registrar of voters agreed to place his name on the ballot for the water district position but refused to accept his nomination papers for the party central committee position because section 8003, subdivision (b) provided " '[n]o person may file nomination papers. . . for more than one office at the same election.' " (*Moore*, at p. 539.) The petitioner sought a writ of mandate compelling the registrar to accept his nomination papers for both positions, the trial court denied the writ, and our Supreme

Court then issued an alternative writ and ordered that the petitioner's name be placed on the ballot for both positions. (*Id*. at pp. 539-540.)

The *Moore* court began by "examin[ing] section [8003] and its subdivision (b) in the context of the Elections Code." (*Moore, supra*, 32 Cal.3d at p. 541.) It noted section 8003 was in a chapter titled " 'Direct Primary,' " and its language had been part of California's election laws since the enactment of the 1913 Direct Primary Law[5] (which was the law discussed in *Narver*). (*Moore*, at p. 541.) It then noted, "A direct primary is defined as 'the primary election . . . to nominate candidates to be voted for at the ensuing general election or to elect members of a party central committee.' " (*Ibid*.) Finally, it noted: "The institution of the direct primary system was not meant to prevent nomination of candidates by means of an independently circulated petition (see §§ [8003, 8300] et seq.). However, *section [8003] places certain limitations on the process of independent nomination 'subsequent to or in lieu of a primary election' pursuant to section [8300] et seq*. Interpreting language of the 1913 Direct Primary Law which was nearly identical to the language of current section [8003], this court said: 'It seems clear to us that the only reasonable construction that can be given to this provision is that it has reference only to attempted nominations under section 1188 of the Political Code "subsequent to" or "in lieu of any primary election." [Now § [8300] et seq.]' ([*Narver*], *supra*, 173 Cal. at pp. 426-427.)" (*Ibid*., italics added.)

The *Moore* court then held the independent nomination process contemplates the *nomination* of candidates to be voted on at the general election, but party central committee members are actually "*to be elected* at every direct primary election." (*Moore, supra*, 32 Cal.3d at p. 542.) "Thus, it is apparent that the code does not provide for nomination of [party central] committee candidates 'subsequent to or in lieu of a primary

---

[5] It has actually been part of California's election laws since before 1913. (See Stats. 1911, ch. 398, § 5, p. 776.)

election.' Applying the analysis of [*Narver*]*, supra*, 173 Cal. 424, it follows that section [8003] and its subdivisions cannot apply to candidates for party county central committees." (*Ibid*.)  In other words, because party central committee members are actually *elected* at the direct primary, the process of independent *nomination* subsequent to or in lieu of a primary election cannot apply to them, and it thus follows that section 8003 and its subdivisions do not apply to party county central committee candidates.  By analogy, this would also mean that section 8003 and its subdivisions "cannot apply" to candidates (like Fong) who are not seeking to utilize the independent nomination process to get on the general election ballot.

Fong agrees with our reading of *Moore* (as did the superior court).  The Secretary argues this reading "overlooks most of the majority's reasoning in *Moore*, which included a detailed discussion of what constitutes an 'office' for purposes of section 8003(b) and ultimately held that a county central committee seat did not qualify."  It is true that the *Moore* court went on to analyze the meaning of the term "office" (*Moore, supra*, 32 Cal.3d at pp. 543-546), but it did so only *after* the discussion we have just described.  Moreover, the *Moore* court never suggested that its discussion of the meaning of the term "office" somehow undermined its conclusion that section 8003, as previously interpreted by *Narver*, " 'has reference only to attempted nominations under section [8300 et seq.] . . . "subsequent to" or "in lieu of any primary election." ' " (*Moore*, at p. 541.) .

The Secretary also cites Justice Mosk's dissent in *Moore*, and, in particular, his statement that "[f]or more than 42 years, it has been the unchallenged law of California that one person may not be a candidate for more than one office at one election, and that the term 'office' embraces every position which an election is held." (*Moore, supra*, 32 Cal.3d at p. 550 (dis. opn. of Mosk, J.).)  "Dissenting opinions, of course, are not binding and have ' "no function except to express the private view of the dissenter." ' " (*People v. Panighetti* (2023) 95 Cal.App.5th 978, 1001.)

15

In short, *Narver* and *Moore* both support our conclusion that section 8003 must be interpreted as a whole and in its statutory context, and that, so interpreted, it only identifies limitations on the independent nomination of candidates subsequent to or in lieu of a primary election, and thus does not apply to Fong's candidacy.[6]

3. *The Secretary's Remaining Arguments*

The Secretary makes a number of other arguments to support her interpretation of section 8003, subdivision (b). None persuades us to change our conclusion.

A.    Location in Elections Code

The Secretary argues the location of section 8003 within the Elections Code supports her interpretation that subdivision (b) applies to *all* candidates and is not just a limitation on candidates utilizing the independent nomination process. She notes section 8003 and section 8300 et seq. are both located in division 8, titled "Nominations." Section 8003 is in part 1, titled "Primary Election Nominations," while section 8300 et seq. is in part 2, titled "Independent Nominations." The Secretary argues: "Section 8003's placement in Part 1 rather than Part 2 therefore indicates a legislative intent to have the statute apply to *all* candidates. In other words, had section 8003(b) been limited in scope to only apply to independent nominees, the Legislature undoubtedly would have placed these provisions in part 2 of division 8."

---

[6]    We note that subdivision (a) of section 8003 provides: "A candidate whose name has been on the ballot as a candidate of a party at the direct primary and who has been defeated for that party nomination is ineligible for nomination as an independent candidate. *He is also ineligible as a candidate named by a party central committee to fill a vacancy on the ballot for the general election*." (Italics added.) The italicized portion was added to the law in 1919 (Stats. 1919, ch. 35, § 1, p. 48) for reasons that are unclear, but it does not appear to be a limitation on the independent nomination process. The presence of this standalone prohibition, however, does not alter our conclusion that the text we construe in this case does not apply to Fong's candidacy.

16

We disagree, because when the provision was originally enacted, it was part of "[a]n act to provide for and regulate primary elections," and this act did not contain divisions, parts, or chapters. (See Stats. 1911, ch. 398, p. 769; Stats. 1913, ch. 690, p. 1379.) Moreover, there is nothing about the language's placement in the act that suggests it was generally applicable to all candidates. Indeed, it appears the Legislature intended the provision to apply only to independent nominations, because the act contained marginal notes inserted by the Legislature, and the marginal note states "Independent Nomination." (Stats. 1911, ch. 398, § 5, p. 776; see also Stats. 1913, ch. 690, § 5, p. 1390 ["Independent Candidates"].) Although not dispositive, this provides additional support for our conclusion that the provision we construe is a limitation that applies only to the independent nomination of candidates, and not to all candidates.

The Elections Code was established in 1939 and the formerly uncodified laws relating to primary elections and the independent nomination process were moved into it. It was at that time that the precursor to section 8003 was placed in a chapter titled "Direct Primary," and the precursor to section 8300 et seq. was placed in a chapter titled "Independent Nominations." (See Stats. 1939, ch. 26, pp. 49, 120, 136, 160.) When it enacted the Elections Code, the Legislature specified two things. First, "The provisions of this code, in so far as they are substantially the same as existing statutory provisions relating to the same subject matter, shall be construed as restatements and continuations, and not as new enactments." And second, "Division, part, chapter, article, and section headings do not in any manner affect the scope, meaning, or intent of the provisions of this code." (Stats. 1939, ch. 26, p. 50.) We thus find the placement of section 8003 in a chapter titled "Direct Primary" did not change, or even affect, its meaning.

Moreover, even if we believed that the placement of section 8003 in a part titled "Primary Election Nominations" was somehow relevant, this placement does not trump its plain language. And as explained above, the plain language of section 8003 specifies that although the Elections Code contains detailed provisions regarding primary election

17

nominations, there is another way to get on the ballot at the ensuing general election (i.e., the independent nomination process), subject to certain "limitations."

B.    Statute's purpose

The Secretary argues her interpretation is the only one that effectuates the statute's purpose, supporting this argument by citing the following statement in *Storer v. Brown* (1974) 415 U.S. 724, 732:  " 'The Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot.  [Citations.]  In so doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections." The Secretary then argues her interpretation of section 8003 "advances these election-related state interests."  *Storer* involved a constitutional challenge to a provision of the Elections Code that prohibited a candidate from utilizing the independent nomination process if he or she had been affiliated with a political party within the preceding year. (*Storer*, at pp. 726-727.)  The United States Supreme Court upheld the provision, holding it furthered the state's "interest in the stability of its political system."  (*Id*. at p. 736.) *Storer* did not involve the proper interpretation of section 8003.  Thus, the fact that states may have an interest in regulating the number of candidates on the ballot does not mean the Legislature intended section 8003 as a general prohibition against running for more than one office at the same election rather than as a limitation on the independent nomination process.

The Secretary also complains, "The trial court never considered why the Legislature would have adopted a prohibition on dual candidacy but applied it only to independent candidates."  Perhaps it was an oversight, or perhaps the Legislature was simply focused on limitations on the independent nomination process when it enacted section 8003.  But if it was an oversight, it is the Legislature's job to correct it, not ours.

C.     Deference to the Secretary's and the Attorney General's interpretation

As the Secretary notes, she is the "chief elections officer of the state, and shall administer the provisions of the Elections Code" (Gov. Code, § 12172.5, subd. (a)), and she cites the following principle:  "[W]hile we take ultimate responsibility for the interpretation of a statute, we accord significant weight and respect to the long-standing construction of a law by the agency charged with its enforcement." (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1082.)  The Secretary argues we should defer to her interpretation of section 8003, subdivision (b) because she administers it and her interpretation is longstanding.  As evidence of her longstanding interpretation of section 8003, subdivision (b), the Secretary asks us to judicially notice two documents.[7]  Neither document convinces us the Secretary's interpretation is correct.

The first document is a 1982 opinion issued by the Secretary of State's office. (Secretary of State Opn. 82 SOS 1 (1982).)  It involved the meaning of the word "office" in section 8003, subdivision (b), and the question was whether that section "prohibit[ed] a candidate from filing nomination papers for membership on a county central committee and for a public office at the same election."  The opinion concluded there was no such prohibition, and it explained, "This conclusion is based on the legal theory that the position of member on a county central committee is not an 'office' within the meaning of section [8003](b)."  (Secretary of State Opn. 82 SOS 1, at p. 1.)  The opinion thus turned on the meaning of the word "office," and it never considered the question at issue

---

[7]     The Secretary's request for judicial notice of exhibit Nos. B and C is granted.  (See Evid. Code, § 452, subds. (c) & (d) [judicial notice may be taken of official acts of the executive department and of court records].)  Her request for judicial notice of exhibit No. A (the petition for review in *Moore*) is denied because it has "little relevance to a material issue in this matter."  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1.) Fong's request for judicial notice of exhibit Nos. A through G and I is denied for the same reason.  Although perhaps not strictly relevant to this case, we do judicially notice the results of the 2024 primary election.

in this case—namely, whether section 8003, subdivision (b) prohibits any candidate from filing nomination papers for more than one office at the same election, or only prohibits a candidate from filing nomination papers for a party nomination and an independent nomination for more than one office at the same election. "An opinion is not authority for a proposition that it did not consider." (*Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1147.)

The second document is a brief that then Secretary of State Bill Jones filed in *Barrales v. Jones* (case No. C029167). (1998 WL 34340277.) The issue in *Barrales* was whether one candidate could run for the office of Orange County Auditor-Controller and also seek to be the Republican Party's nominee for State Controller at a statewide primary election. (*Id*. at p. *2.) The brief opened with the following statement: "Respondent, Secretary of State Bill Jones (or hereafter 'SOS'), *takes no position on the merits of this case*, even though the SOS has a long-standing policy implementing the provision of Elections Code Section 8003(b) that 'No person may file nomination papers . . . for more than one office at the same election.' " (*Id*. at p. *1, fn. omitted, italics added, ellipses in original.) The brief then goes on to state the following: "The general rule is found in Section 8003(b), which reads as follows: 'This chapter does not prohibit the independent nomination of candidates under Part 2 (commencing with Section 8300), subject to the following limitations: [¶] . . . [¶] (b) No person may file nomination papers for a party nomination and an independent nomination for the same office, *or for more than one office at the same election*[.]' (emphasis added.) [¶] It has been the consistent policy of the Secretary of State that the emphasized language of that Section, '*or for more than one office at the same election*,' is controlling at all levels, state and local." (*Id*. at p. *3.) That is the extent of the discussion of section 8003. There is no consideration of whether the first part of section 8003 limits its application to the independent nomination process. Instead, it simply assumes, without discussion, that section 8003, subdivision (b) prohibits anyone from running for more than one office at the same election. We are not

prepared to afford this interpretation much weight, particularly where, as here, it appears in a brief in which the Secretary of State "takes no position on the merits," and simply assumes a particular interpretation and fails to explain the reasons therefor. (See, e.g., *Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 859 ["Whether a statutory interpretation by an administrative agency is entitled to judicial deference, and the weight due to the agency's interpretation, 'turns on a legally informed, commonsense assessment of [its] contextual merit' "].)

Relatedly, the Secretary also argues two Attorney General opinions support her interpretation, citing the rule that " '[o]pinions of the Attorney General, while not binding, are entitled to great weight.' "[8] (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17.) Both opinions, however, turned on the meaning of the word "office," and both simply assumed without any analysis that section 8003, subdivision (b) applies broadly to all candidates at all elections.

The first opinion was issued in 1940 by then Attorney General Earl Warren. (Ops.Cal.Atty.Gen. No. NS-2739 (1940).) In this opinion, the Attorney General concurred in an opinion issued by the District Attorney of Contra Costa County, and most of the Attorney General's opinion simply quotes the district attorney's opinion. The county clerk had asked the district attorney the following question: "[C]an the same person be a candidate at the same election for the office of member of the county central committee and member of the assembly and have his name appear on the same ballot twice?" (*Id*. at p. 1.) The district attorney responded: "I wish to call your attention to

---

[8]     We note our Supreme Court considered these same two opinions in *Moore* and ultimately held "we do not find their interpretation of the statutory provision at issue persuasive." (*Moore, supra*, 32 Cal.3d at p. 544; see *id*. at pp. 543-544; *id*. at p. 550 (dis. opn. of Mosk, J.).) Although the court found the opinions unpersuasive on a different issue (the meaning of the term "office"), the case nonetheless highlights that we are not bound by an unpersuasive interpretation of the law.

21

section [8003] of the Elections Code, the pertinent part of which reads as follows: (Subdivision B) 'No person may file nomination papers . . . for more than one office at the same election.' [¶] After giving serious consideration to the use of the word 'office,' I am inclined to the belief that a candidate for the Assembly and a candidate for the central committee is a candidate for more than one office." (*Id*. at p. 2.) The district attorney then went on to explain his interpretation of the word "office," and he concluded, "it is my belief that you should refuse to file the declaration of candidacy of this candidate . . . declaring his candidacy for the office of Member of the Assembly." (*Id*. at p. 3.) After quoting the district attorney's opinion in full, the Attorney General stated: "I concur with you in your conclusions. [¶] In my opinion a member of a county central committee and, likewise, an Assemblyman, holds an 'office,' as that term is used in subdivision (b) of section [8003] of the Elections Code, which prohibits a person from filing nomination papers for more than one office at the same election." (*Ibid*.) The Attorney General's conclusion was thus based on the meaning of the term "office," and it appears he simply assumed without any analysis that section 8003, subdivision (b) applies broadly to all candidates at all elections. The opinion did not consider or even mention the first clause of section 8003 (i.e., "This chapter does not prohibit the independent nomination of candidates . . . subject to the following limitations"), and that first clause is critical to a proper interpretation of section 8003 as a whole.

The second opinion was issued in 1962 by then Attorney General Stanley Mosk. (40 Ops.Cal.Atty.Gen. 99 (1962).) In that case, a candidate filed nomination papers for the party central committee, and then later filed nomination papers for the 15th Congressional District. His name appeared on the primary ballot for both positions, and he received a plurality of votes for both positions. (*Id*. at p. 100.) Thereafter, the Secretary of State sought an opinion from the Attorney General on the following question: "Should a certificate evidencing nomination as a candidate for Congress be issued to an individual who first filed for the office of County Central Committee and

22

later filed for the nomination for Congress and was successful in winning both contests?" The Attorney General concluded, "The certificate should be issued." (*Id*. at p. 99.) Before turning to the reasons for that conclusion, the Attorney General noted, "Subsection (b) of . . . section [8003] has been construed by this office as preventing an individual from seeking two offices at the same election (Ops. Cal. Atty. Gen. No. NS-2739 [1940]). The same opinion held that the position of County Central Committeeman was an 'office' within the meaning of section [8003](b). This opinion has existed for twenty-two years . . . [citation] . . . and is hereby reaffirmed." (*Id*. at p. 100, fn. omitted.) Nevertheless, the Attorney General concluded the Secretary of State had a ministerial duty to issue a certificate of nomination to the candidate who received the highest number of votes, and was not authorized to independently investigate or determine "whether a nominee has violated section [8003](b) as construed by this office," and "may not refuse to issue a certificate of nomination solely upon the ground that [the candidate] may have violated the provisions of section [8003](b)." (*Id*. at pp. 100, 102.) Once again, the Attorney General did not consider or mention the first clause of section 8003 and appears to have simply assumed subdivision (b) applies broadly to all candidates at all elections.

In summary, we do not find the opinions of the Secretary of State or the Attorney General persuasive on the issue before us.

D.     Avoiding absurd results

The Secretary argues Fong's interpretation of section 8003, subdivision (b) would lead to absurd results, and she cites cases that hold "if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735), and "[w]e need not follow the plain meaning of a statute when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340). The Secretary argues Fong's interpretation of the statute would lead to absurd results because it would allow

23

candidates to "run for an unlimited number of offices during the same election, review the results, and pick the office they want most of those won, and resign from the rest (likely necessitating special elections). For example, a party candidate could run for every California congressional seat at the same time. Or one very popular candidate could conceivably run for Governor, Lieutenant Governor, Secretary of State, Attorney General, Controller, and Treasurer at the same election, win them all, and then resign from all but the Governor's office and appoint their friends to other statewide offices."

We acknowledge that anomalous results could flow from the conclusion we reach today. But whatever we think of the Secretary's example in the abstract, that is not what happened in this case. As our Supreme Court has cautioned, "We must apply the plain terms of the . . . statutes *to the facts of this case* unless such a result . . . would lead to absurd results that clearly undermine the statutory purpose." (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 119, italics added.) We are not convinced that applying section 8003, subdivision (b) as we have interpreted it to the facts of this case would lead to absurd results. "We express no view about whether the statutory language, thus applied, ideally balances the competing concerns or represents the soundest public policy. Such is not our responsibility or our province. We simply conclude, as a matter of statutory construction, that application of the statutes' plain terms *to the circumstances of this case* does not produce absurd results that are clearly contrary to the Legislature's intent." (*Cassel*, at p. 136, italics added.)

We also note: " 'There are few, if any, sources guiding an appellate court on how to apply the absurdity exception to the "plain meaning rule." ' [Citation.] 'This exception should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. (Cal. Const., art. III, § 3.) We do not sit as a "super-legislature." [Citation.]' [Citation.] '[E]xcept in the most extreme cases where legislative intent and the underlying purpose are at odds with the plain language of the statute, an appellate court should exercise judicial restraint, stay its

24

hand, and refrain from rewriting a statute to find an intent not expressed by the Legislature.' " (*Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262, 279.)  This is not one of those extreme cases.  If the Legislature wants to prohibit candidates from running for more than one office at the same election, it is free to do so.  Unless and until it does so, however, we must take section 8003 as we find it and enforce it as written.  (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1697 [" 'Courts must take a statute as they find it, and if its operation results in inequality or hardship in some cases, the remedy therefor lies with the legislative authority' "].)

## DISPOSITION

The petition for writ of mandate is denied.  The parties shall bear their own costs in this original proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)  This opinion shall become final as to this court immediately upon filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)


      /s/
EARL, P. J.


We concur:


    /s/
KRAUSE, J.


    /s/
BOULWARE EURIE, J.